389 So.2d 1277 (1980)
Calvin A. REVERE
v.
Karen Hiller REVERE.
No. 67434.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
*1278 M. J. LeGardeur, Jr., Burns, Farmer & LeGardeur, Brady M. Fitzsimmons, Covington, for defendant-applicant.
Michael T. Stone, Jack A. Blossman, Covington, for plaintiff-respondent.
LEMMON, Justice.
The sole issue at this stage of the child custody contest between the mother and the parents of the deceased father (who had been awarded custody when he obtained a divorce from the mother) is the correctness of the judgment overruling an exception to the jurisdiction of the district court in St. Tammany Parish. The decision turns on the application of R.S. 13:1700 et seq., the Uniform Child Custody Jurisdiction Law, enacted in 1978.

I.
Calvin and Karen Revere married in June, 1974, establishing their matrimonial domicile in St. Tammany Parish where both had lived most of their lives. After one child, Christopher, was born in June, 1975, Karen Revere abandoned her husband and child in August, 1976. Calvin Revere obtained a judgment of separation in St. Tammany Parish later that year and a judgment of divorce in 1977, being awarded child custody in both judgments.
Calvin Revere's parents took care of and helped raise the child from the date of the mother's abandonment until the father was killed on June 18, 1979. The mother had remarried and was living in Texas at the time.
On June 26, 1979 the mother took physical control of the child from the paternal grandparents and obtained an ex parte custody order from the district court in St. Tammany Parish on June 28, 1979. The child has since lived in Texas with the mother and her present husband.
On December 28, 1979 the paternal grandparents filed a rule to change custody in St. Tammany Parish, alleging the mother's unfitness and forfeiture of parental rights. The mother excepted to the court's jurisdiction. The trial court overruled the exception, and the court of appeal denied the mother's application for supervisory writs. We granted certiorari to review the judgments below. 384 So.2d 804.

II.
The Uniform Child Custody Jurisdiction Law was proposed in an effort to have states impose uniform legislative rules on themselves regarding jurisdiction in child custody cases. A custody decree in one state is subject to modification not only by the courts of that state, but also by the courts of another state, since the Full Faith and Credit clause has limited application in *1279 custody cases. New York ex rel. Halvey v. Halvey, 330 U.S. 610, 67 S.Ct. 903, 91 L.Ed. 1133 (1947). In an age of fluid population trends many cases are presented in which jurisdiction may be concurrent in several states. In order to provide some stability to reasoned custody decrees by discouraging relitigation, to deter custody determinations by physical abduction, to avoid jurisdictional competition and conflicting custody decrees in several states, and primarily to attain the security of home environment necessary for a child's well being, the National Conference of Commissioners proposed the uniform law adopted in Louisiana by Act 513 of 1978. See R.S. 13:1700.[1] At that time numerous other states had adopted the uniform law.
Under the statutory scheme a Louisiana court competent to adjudicate child custody has jurisdiction to render initial decrees or modifications in two principal situations: (1) when Louisiana is the child's home state [R.S. 13:1702A(1)]; and (2) when the child and at least one contestant have a significant connection with Louisiana so that it is in the best interest of the child that Louisiana assume jurisdiction [R.S. 13:1702A(2)].[2] Section 1702 also covers emergency situations because Louisiana is the more appropriate forum.
The "home state" standard provides a jurisdictional concept which is easy to apply without need of further inquiry. Under this rule jurisdiction is automatic if the child lived in Louisiana with a parent or a person acting as a parent for at least six consecutive months at the time the proceeding was commenced, or if the child within six months of commencement is removed from Louisiana or retained elsewhere while the parent or person acting as a parent continues to live in Louisiana.
The theory is that the court of the home state is in the best position for evidence gathering and for exercising continuity of control, so that when the home state has jurisdiction, courts of other states should generally defer to and cooperate with that jurisdiction.
The "significant connection" standard is a more flexible one, based on strong contacts of the child and the contestant with the state in which the proceeding is commenced. This standard provides a "best interest" basis for jurisdiction when Louisiana has a legitimate concern as to custody and has superior access to evidence concerning *1280 the child's care, training, well being and personal relationships.
It is evident that jurisdiction may exist in two different states under the home state and significant connection standards. When this occurs, it is not necessary that the significant connection state defer in every case to the home state.[3] The conflict is avoided by reference to priority of filing (see R.S. 13:1705, which requires a court with jurisdiction under the uniform law to defer to the court of another state with uniform law jurisdiction when the first proceeding was filed in the latter state) and to factors indicating Louisiana is an inconvenient forum (see R.S. 13:1706, which encourages judicial restraint when another state with jurisdiction under the uniform law appears to be in a better position to determine custody).[4]
*1281 III.
In the present case it is a close question whether Louisiana qualified as the child's home state on December 28, 1979, the date the grandparents commenced the present proceeding.
If the child remained in Louisiana through June 28 or later, then Louisiana is clearly the home state and automatically has jurisdiction. The mother's motion for change of custody was signed by her and filed on June 28, 1979, exactly six months before the commencement of this proceeding. Since the pleading does not allege that the child had been removed to Texas, the inference is raised that on June 28 she had not yet removed the child to Texas. (According to the grandparents' motion, the mother took the child from them on June 26.)
The trial of the exception was conducted on February 12, 1980. The parties stipulated many pertinent facts, but disagreed as to the last date that the child lived in St. Tammany Parish, and no evidence was presented to rebut the inference drawn from both parties' pleadings.[5]
The trial judge pretermitted that question and decided the case on the basis of the substantial connection standard of Section 1702A(2). Under this standard the trial judge was clearly correct in exercising jurisdiction.
Both parents lived in St. Tammany Parish for many years, were married there, and established their only matrimonial domicile there. The child was born there and spent his entire life there until being moved to Texas six months before the commencement of this proceeding. The grandparents on both sides live in St. Tammany Parish. The district court in that parish rendered the judgment of divorce and the awards of child custody. When the grandparents' motion for custody was set for trial (before being continued after the ruling on the exception), every one of the 16 witnesses for both sides was from St. Tammany or an adjoining parish, except for the mother and her present husband. Furthermore, the grandparents' motion raised a substantial issue as to the mother's moral unfitness and forfeiture of parental rights, and they asserted that most of their evidence on these issues involved events occurring in Louisiana.[6] (The mother's conduct, which led to the judgment of separation based on abandonment and prompted the custody award to the father, is certainly important evidence for consideration in determining these issues.) Finally, the child's major asset is a pending claim for his father's wrongful death, which has been filed in Louisiana.
On the other hand, Texas' only significant connection with the mother and the child involved relationships established during the child's six-month period of residence (the minimum for applicability of the home state standard). These relationships, while relevant and important, arguably have less significance for a pre-school child than family relationships of longstanding.
*1282 Louisiana therefore appears to be a state with such significant connections with the child and one contestant that it is in the child's best interest for the state to assume jurisdiction. Even if Louisiana does not qualify as the home state, this state has at least concurrent jurisdiction. Additionally, if there is concurrent jurisdiction, Louisiana, at the time this proceeding was commenced, was the only state where any proceedings relating to this child's custody had ever been filed.[7] Because of this history and the significant connections discussed above, the Louisiana court should consider modification of the custody decrees previously rendered here. And Louisiana clearly is not an inconvenient forum for determining the issues raised in this custody contest.
Under the overall circumstances presented by this case, jurisdiction under the uniform law may properly be exercised by the district court in Louisiana.
Accordingly, the judgment of the district courts is affirmed, and the case is remanded for further proceedings.
AFFIRMED.

On Application for Rehearing
PER CURIAM.
The court did not consider the pleadings in the Texas custody action, because these pleadings were filed in this record after the trial court rendered the judgment under appeal and are properly entered into the record by means of a motion to remand to the trial court, which is the forum where evidence is introduced. No such motion was filed, and an examination of the pleadings reveals no compelling reason for the court to order a remand on its own motion.
The application for rehearing is denied.
APPLICATION DENIED.
NOTES
[1] See also Legislative Symposium, 39 La.L.Rev. 107 (1978); Foster and Freed, Child Snatching and Custodial Fights; The Case for the Uniform Child Custody Jurisdiction Act, 28 Hastings L.Jour. 1011 (1977); Bodenheimer, The Uniform Child Custody Jurisdiction Act: A Legislative Remedy for Children Caught in the Conflict of Laws, 22 Vand.L.Rev. 1207 (1969).
[2] R.S. 13:1702 provides in its entirety as follows:

"A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
"(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
"(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or
"(3) The child is physically present in this state and (i) the child has been abandoned or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or
"(4) (i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with Paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction.
"B. Except under Paragraphs (3) and (4) of Subsection A, physical presence in this state of the child, or of the child and one of the contestants, is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.
"C. Physical presence of the child, while desirable, is not a prerequisite for jurisdiction to determine his custody."
[3] Texas has not enacted the uniform law. The act, however, is not a reciprocal act, and by adopting the uniform law, Louisiana has obligated itself to adhere to the terms of the act even though the other concerned state has not done so.
[4] R.S. 13:1705 and 1706 provide:

"A. A court of this state shall not exercise its jurisdiction under this Act if at the time of filing the petition a proceeding concerning the custody of the child was pending in a court of another state exercising jurisdiction substantially in conformity with this Part, unless the proceeding is stayed by the court of the state because this state is a more appropriate forum or for other reasons.
"B. Before hearing the petition in a custody proceeding the court shall examine the pleadings and other information supplied by the parties under Section 1715 concerning the pendency of proceedings with respect to the child in other states. If the court has reason to believe that proceedings may be pending in another state it shall direct an inquiry to the state court administrator or other appropriate official of the other state.
"C. If the court is informed during the course of the proceeding that a proceeding concerning the custody of the child was pending in another state before the court assumed jurisdiction it shall stay the proceeding and communicate with the court in which the other proceeding is pending to the end that the issue may be litigated in the more appropriate forum and that information be exchanged in accordance with Sections 1718 through 1721. If a court of this state has made a custody decree before being informed of a pending proceeding in a court of another state it shall immediately inform that court of the fact. If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction it shall likewise inform the other court to the end that the issues may be litigated in the more appropriate forum." Section 1705.
"A. A court which has jurisdiction under this Part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
"B. A finding of inconvenient forum may be made upon the court's own motion or upon motion of a party or a curator ad hoc or other representative of the child.
"C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
"(1) If another state is or recently was the child's home state.
"(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
"(3) If substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state.
"(4) If the parties have agreed on another forum which is no less appropriate, and
"(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.
"D. Before determining whether to decline or retain jurisdiction the court may communicate with a court of another state and exchange information pertinent to the assumption of jurisdiction by either court with a view to assuring that jurisdiction will be exercised by the more appropriate court and that a forum will be available to the parties.
"E. If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or it may stay the proceedings upon condition that a custody proceeding be promptly commenced in another named state or upon any other conditions which may be just and proper, including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.
"F. The court may decline to exercise its jurisdiction under this Part if a custody determination is incidental to an action for divorce or another proceeding while retaining jurisdiction over the divorce or other proceeding.
"G. If it appears to the court that it is clearly an inappropriate forum it may require the party who commenced the proceedings to pay, in addition to the costs of the proceedings in this state, necessary travel and other expenses, including attorneys' fees, incurred by other parties or their witnesses. Payment is made to the clerk of the court for remittance to the proper party.
"H. Upon dismissal or stay of proceedings under this Section the court shall inform the court found to be the more appropriate forum of this fact, or if the court which would have jurisdiction in the other state is not certainly known, shall transmit the information to the court administrator or other appropriate official for forwarding to the appropriate court.
"I. Any communication received from another state informing this state of a finding of inconvenient forum because a court of this state is the more appropriate forum shall be filed in the custody registry of the appropriate court. Upon assuming jurisdiction, the court of this state shall inform the original court of this fact." Section 1706.
[5] The mother's affidavit appears in the record, but it was never offered as evidence at trial, and opposing counsel had no chance to object to its admissibility. Since the trial judge did not consider the affidavit, we likewise decline to do so.
[6] R.S. 13:1702A(2) refers to the availability of substantial evidence concerning the child's present and future care, protection, training, and personal relationships. However, evidence of past misconduct and immoral behavior by a parent is relevant to the child's present and future care, training and personal relationships.
[7] The mother subsequent to the judgment under review filed a custody proceeding in Texas.