588 So.2d 795 (1991)
Dorothy Lingo TABUCHI, Plaintiff/Appellant,
v.
Michael A. LINGO, Plaintiff/Appellee.
No. 22,829-CA.
Court of Appeal of Louisiana, Second Circuit.
October 30, 1991.
Rehearing Denied November 27, 1991.
*796 Paul Henry Kidd, Jr., Monroe, for plaintiff/appellant.
John M. Lancaster, Oak Grove, for plaintiff/appellee.
Before NORRIS, LINDSAY and BROWN, JJ.
NORRIS, Judge.
Michael A. Lingo filed the instant rule to amend and alter joint custody, seeking to be named primary custodian of his minor son. Dorothy Lingo Tabuchi, the boy's mother, filed exceptions of lack of subject matter jurisdiction, inconvenient forum and no cause of action, all of which were denied. After a hearing, the trial court granted the change of custody. In four assignments, Mrs. Tabuchi asks this court to find that dismissal of her exceptions was error and that the trial court's ex parte temporary custody order was contrary to law. Finding that the trial court erred in dismissing Mrs. Tabuchi's exception to lack of jurisdiction, we reverse.

FACTS
The parties were married in 1974. Two children were born of the marriage, Thomas Jason (born June 18, 1977) and Christina Ann (born September 26, 1980). The parties lived in West Carroll Parish from the time of their marriage until they obtained judgments of separation and divorce in 1983. The West Carroll judgments awarded the mother sole custody and primary care of the two children, subject to the father's reasonable visitation rights. In April 1984, Dorothy Lingo remarried and moved with her two children to Branson, Missouri. With the exception of summer vacations and holidays, the children have lived continuously with Mrs. Tabuchi and her husband since that time.
On June 26, 1986, the West Carroll court signed a stipulated joint custody judgment which in essence designated the mother as *797 the primary custodian and gave the father physical custody during July and August and certain holidays. On June 14, 1990, while Thomas was visiting his father for summer vacation, Mr. Lingo filed for and obtained an ex parte temporary custody order of his minor son and filed the instant rule to modify the existing custody order whereby he would become the primary custodian of Thomas only.
The trial court denied Mrs. Tabuchi's exceptions after a hearing on July 9, 1990, and heard the custody rule on July 30, 1990. In a judgment signed October 22, 1990, the court awarded primary custody of 13-year old Thomas to Mr. Lingo.

DISCUSSION
In her first assignment, Mrs. Tabuchi argues that the trial court erred in denying her exception of lack of jurisdiction, arguing that under La.R.S. 13:1700 et seq. (Uniform Child Custody Jurisdiction Act) Louisiana was no longer the children's "home state" and lacked "significant connections" sufficient to meet the statutory requirements.
In order for a court to exercise continuing jurisdiction to modify its earlier custody decree, it must meet the jurisdictional requirements of the UCCJA at the time the modification is sought. Counts v. Bracken, 494 So.2d 1275, 1278 (La.App.2d Cir.1986). La.R.S. 13:1702, provides four possible jurisdictional bases.[1] The pertinent portions read as follows:
§ 1702. Jurisdiction
A. A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
(1) This state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or
(2) It is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his parents, or the child and at least one contestant, have a significant connection with this state, and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships[.]
R.S. 13:1701(5) defines "home state" as:
[T]he state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
Home state jurisdiction under § 1702 A(1), was thus unavailable to the trial court in this case because Thomas had not lived in Louisiana for at least six consecutive months at the time the proceeding was commenced. See Revere v. Revere, 389 So.2d 1277, 1279 (La.1980). As both children had lived continuously with their mother in Missouri since April 1984, home state jurisdiction clearly vested in the Missouri court system long before this action was brought.
It has been suggested that the jurisdictional rules of § 1702 are listed in the statute in descending preferential order. Snider v. Snider, 474 So.2d 1374, 1379 (La.App.2d Cir.1985), and authority therein. The Louisiana Supreme Court has stated that courts of other states should generally defer to the home state, since that state is usually "in the best position for evidence gathering and for exercising continuity of control." Revere v. Revere, supra, at 1279. Nevertheless, jurisdiction may exist concurrently in two different states under the home state and significant connection standards. *798 When this occurs, the significant connection state is not necessarily required to defer to the home state. Id. at 1280.
Equally clear, however, is that the purpose of § 1702 A(2) is to limit jurisdiction rather than proliferate it. Counts v. Bracken, supra at 1277, and citations therein. A Louisiana court does not possess jurisdiction under the significant connection test merely because some evidence exists here. The Revere court noted that the significant connection test "provides a `best interest' basis for jurisdiction when Louisiana has a legitimate concern as to custody and has superior access to evidence concerning the child's care, training, well being and personal relationships." Revere v. Revere, supra, at 1279-80 (emphasis added). Similarly, this court has consistently held that jurisdiction under § 1702 A(2) "rests with the state that has maximum rather than minimum contacts with the child and optimum access to relevant evidence about the child and the family." Lee v. Lee, 545 So.2d 1271, 1274 (La. App.2d Cir.1989) (emphasis added), citing Counts v. Bracken, supra, at 1277. Even if both states could legitimately claim a significant connection, the law requires a comparative determination as to whether one state has a greater or more recent significant connection with the children. Snider v. Snider, supra, at 1381.
Thus, jurisdiction is proper under § 1702 A(2) if (1) it is in the child's best interest to determine custody in Louisiana; (2) the child and at least one parent have a significant connection to Louisiana; and, (3) a maximum amount of evidence concerning the child is available in Louisiana. Schroth v. Schroth, 449 So.2d 640, 642 (La.App. 4th Cir.1984).
We conclude that Louisiana did not possess connections which were "maximum," "optimum" or "superior" when compared to those which existed in the home state, Missouri. The trial court, in its written reasons for judgment, placed too much emphasis on Mr. Lingo's life-long residency in West Carroll Parish, the presence of Thomas's paternal grandparents as well as other relatives there, and Thomas's participation in the local baseball program while visiting his father. At the time of the hearing, Thomas had lived the most recent six of his 13 years in Missouri with his mother, sister and step-father. Virtually all his school records were there, in addition to evidence of his various extra-curricular activities. Thomas's teachers, tutors, schoolfriends, neighbors, and primary doctors were all Missouri residents.
A party seeking to alter a prior consent decree of custody (as is present here) must show a change of circumstances and that the new custody arrangement is in the child's best interest; stability of environment is a factor to be considered in evaluating a change. Meredith v. Meredith, 521 So.2d 793, 796 (La.App.2d Cir. 1988); Dungan v. Dungan, 499 So.2d 149, 151 (La.App.2d Cir.1986). Since the trial court must determine whether a change would be in the child's best interest it must examine evidence concerning both the current and the prospective living arrangements. Thus, while evidence regarding conditions in Mr. Lingo's home is certainly present in Louisiana, by far the greatest amount of information concerning Mrs. Tabuchi's home and Thomas himself exists in Missouri. Under the facts presented here, Missouri was both the home state and the state with the most significant connection to the child and the maximum evidence concerning his present or future care, protection, training and personal relationships. R.S. 13:1702 A(2). Compare Moore v. Moore, 379 So.2d 1153 (La.App.2d Cir. 1980). The trial court did not possess subject matter jurisdiction to hear this controversy, and abused its discretion in overruling Mrs. Tabuchi's exception.
We are unpersuaded that the cases Mr. Lingo cites in brief are truly analogous to his own. In Revere, supra, the four-year-old child had lived all his life in Louisiana until his mother, who had abandoned him three years earlier, obtained an ex parte order and took him with her to Texas; the Supreme Court found that Louisiana had significant connections with the child sufficient to justify jurisdiction to hear the paternal grandparents' rule to change custody, *799 even though the suit might have been filed too late for Louisiana still to have home state jurisdiction. Similarly, in Peery v. Peery, 453 So.2d 635 (La.App.2d Cir. 1984), we found that the trial court's exercise of jurisdiction was proper because Louisiana was both the home state and the state with the most significant connections and evidence. By contrast, Thomas has not resided regularly in Louisiana since 1984. Also distinguishable is St. Andrie v. St. Andrie, 473 So.2d 140 (La.App. 3d Cir. 1985); there the court concluded that both Georgia and Louisiana had significant connections to the child where the father lived in Louisiana, the mother in Georgia, and where the child's time had been divided almost equally between the two states. Furthermore, Mr. St. Andrie sought merely to enforce an existing Louisiana custody decree which had been rendered less than a year before. In the instant case, more than four years had elapsed since the West Carroll court had last been asked to address the custody of the Lingo children. The cases briefed do not militate in favor of finding jurisdiction in Louisiana under the facts of this case.
Because of our holding that the trial court lacked jurisdiction to hear this case, we pretermit Mrs. Tabuchi's second and third assignments regarding inconvenient forum and no cause of action. The ex parte temporary custody order of which Mrs. Tabuchi complains in her fourth assignment was supplanted by the October 1990 modification judgment, which is in turn reversed by our decision today. It is well-settled that an ex parte custody order granted by a trial judge without notice, service of pleadings, and without affording a hearing to the parent having custody of the child is null and without effect. McManus v. McManus, 528 So.2d 696 (La. App.2d Cir.1988). While the illegality of the ex parte temporary custody order is now moot, we feel compelled to express our disapproval of the practice of granting such orders in the absence of statutory authority.
For the reasons expressed, we reverse the trial court, delete the judgment of October 22, 1990 and reinstate the joint custody judgment of June 26, 1986. We assess all costs to Mr. Lingo.
REVERSED.

APPLICATION FOR REHEARING
Before SEXTON, NORRIS, LINDSAY, BROWN and STEWART, JJ.
Rehearing denied.
NOTES
[1] The parties concede that sections A(3) and (4) are inapplicable.