665 So.2d 71 (1995)
Joseph D. DEVILLIER, et al.
v.
Jeffrey James SMITH.
No. 95 CA 0846.
Court of Appeal of Louisiana, First Circuit.
November 9, 1995.
*72 Ralph D. Hillman, Thibodaux, for Plaintiffs-Appellants, Joseph D. Devillier, et al.
Stephen E. Caillouet, Thibodaux, for Defendant-Appellee, Jeffrey J. Smith.
Before CARTER and PITCHER, JJ., and CRAIN[1], J. Pro Tem.
HILLARY J. CRAIN, Judge Pro Tem.
Jeffrey James Smith and Gwendolyn Georgette Devillier (Gigi) were married in December, 1988. Gigi Devillier Smith was from Thibodaux, Louisiana where the couple married. Immediately after the wedding they established a residence in Lewiston, Maine, where Mr. Smith was employed. Their daughter, Regina was born on March 18, 1992. Mrs. Smith died on January 5, 1993. The Smiths lived in Maine continuously throughout their marriage; Regina was born in Maine, and Mrs. Smith died in Maine.
It is undisputed that on several occasions after their daughter's death, Mr. and Mrs. Devillier kept Regina at their Thibodaux home for extended periods of time in order to assist their son-in-law, Jeffrey Smith, who was devastated by his wife's death. Mr. Smith continued living and working in Maine and was having difficulty making suitable child care arrangements for Regina due to the various shifts he was required to work. Regina also was cared for by her maternal aunt and uncle who reside in Maine. With the consent of Mr. Smith, Regina lived with the Devilliers in Thibodaux from October of 1993 to October, 1994. In October or early November, 1994, Regina returned to Maine with her father with the approval of the Devilliers. None of the parties allege that Regina was forcefully moved from one state to another, nor has any custody decree been rendered involving Regina's status in any court in any state.
On January 6, 1995, the Devilliers filed a petition for custody in the district court of Lafourche Parish, Louisiana, pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA). Mr. Smith filed the declinatory exception raising the objection of lack of subject matter jurisdiction. The trial court sustained the exception. The Devilliers have appealed. The sole issue before us is whether the trial court correctly declined to exercise jurisdiction in this child custody dispute.

*73 UNIFORM CHILD CUSTODY JURISDICTION ACT

This action was brought under La.R.S. 13:1700-1724, the Uniform Child Custody Jurisdiction Act (UCCJA). The primary purposes for the enactment of the Uniform Child Custody Jurisdiction Act are set forth in La.R.S. 13:1700(A) in part, as follows:
(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being.
(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child.
(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and to assure that the courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state.
A Louisiana court which is otherwise competent to adjudicate child custody has jurisdiction to make a child custody determination under the UCCJA if Louisiana is the home state. La.R.S. 13:1702(A)(1). A Louisiana court also has jurisdiction if it is in the best interest of the child for a court of this state to assume jurisdiction because the child and his parents or the child and a contestant have a significant connection with this state and there is substantial evidence available in this state to be considered in making a custody determination. La.R.S. 13:1702(A)(2).
The home state is automatically given jurisdiction because theoretically "the court of the home state is in the best position for evidence gathering and for exercising continuity of control, so that when the home state has jurisdiction, courts of other states should generally defer to and cooperate with that jurisdiction." Revere v. Revere, 389 So.2d 1277, 1279 (La.1980). The state with significant connection also has a basis for jurisdiction because of its "superior access to evidence concerning the child's care, training, well being and personal relationships." Id. at 1279-1280. Jurisdiction may exist in two different states under the home state and significant connection standards. Under these circumstances the state with significant connections need not always defer to the home state. Id. at 1280. Where both states present a legitimate claim of significant connection, a comparative determination must be made of which state has maximum connection with the child. Tabuchi v. Lingo, 588 So.2d 795 (La.App. 2d Cir.1991).
The trial court found Louisiana was the home state and thus had jurisdiction under the UCCJA[2]. The court additionally determined that both Louisiana and Maine had significant connection with the child thus giving Maine comparative jurisdiction. A comparative analysis of the "significant contacts" of Louisiana and Maine was performed[3]. The court found that the only contact with Louisiana was the temporary residence of Regina with the Devilliers and "[a]ll of the other contacts and all of the other information having to do with the fitness of Jeff Smith to continue as a parent to this child are in the State of Maine." Thus, the court granted the exception.
From the facts and circumstances presented we find no error in the trial court's determination that Maine possessed maximum contacts and optimum access to relevant evidence about Regina and her family when *74 compared to those contacts possessed by the State of Louisiana. Accordingly, we affirm the judgment of the trial court. Costs are assessed against the Devilliers.
AFFIRMED.

APPENDIX A
REASONS FOR JUDGMENT
THE COURT:
The law in this case is very clear, as far as how it applies to the facts of the case. The law clearly requires the application of the Uniform Child Custody Jurisdiction Act to the case. And as a result of that, the Court is required to make several inquiries. First inquiry under Art. 1702 in determining jurisdiction is to determine if this state is the home state of the child at the commencement of the proceeding, or had been the home state of the child within six months before commencement and the child is absent because of his removal by a person claiming his custody and a parent or person acting as parent continues to live in this state.
It's necessary in applying that statute to the facts of the case to look at the definitions of the terms `home state,' the definition of the term `person acting as parent.' From the facts, that are really not in dispute, that the child came to Louisiana, or left Louisiana in October of 1994, and the suit, petition was filed in January 1995, certainly that means that the action was commenced beginning with a period less than six months after the child left the State of Louisiana. And certainly Mr. and Mrs. Devillier, who have brought this action, it is not in dispute that the child was in their physical custody at the time that she left the state and that the child was living with them at the time she was in the state. As a result of that it is really not difficult to conclude that Louisiana fits the definition of `home state.' So it is the ruling of the Court on that issue that the child, that Louisiana is the home state of Regina.
It is necessary in deciding the exception, also, to look at the second part of the test, because there is a requirement when there are sufficient facts to put the court on notice of contacts in the other state the Court is required by the Supreme Court to look at the significant connection part of it as well. Mr. Hillman has cited the Revere case to the Court through the other case, and the Revere case is the 1980 Supreme Court case that discussed many of the particular points of law that we are talking about here.
And the Court in the Revere case states very clearly that it is evident that jurisdictionand I'm citing from Page 1280 of the Revere caseit is evident that jurisdiction may exist in two different states under the home state and significant connection standards. When this occurred it is not necessary that the significant connection state defer in every case to the home state.
In reviewing the facts of this case and the deposition of Mr. Smith, the contacts of the State of Louisiana as to the issue of the custody of the child, Regina Smith, are as follows: that for a period of approximately 11 months, and for several off and on periods before that, the child was in residence in the State of Louisiana in the physical custody of Mr. and Mrs. Devillier. The child was brought for medical attention on several occasions while she was here.
The contacts on the side of the State of Maine is that the surviving parent, Mr. Jeff Smith, is a resident and has been for several years in the State of Maine, that he is gainfully employed there; according to the deposition, which is uncontradicted, in many respects as far as what goes on that all of the people other than Mr. Smith, the parent, and Mr. and Mrs. Devillier, who have provided child care for Regina, are domiciled in the State of Maine, including Mr. and Mrs. Devillier's son, John, and his wife, Kim. The testimony in the deposition indicates that Regina is presently involved in a day-care program, depending on Mr. Smith's work scheduled, [sic] and at other times has someone that comes into his home to provide care for her.
The substantial contact rule mentioned by the Revere case has to do with the availability of evidence for a trial on custody *75 to make certain that there is enough evidence to be presented to the Court for any court in any state to be the best place for the issue of custody to be decided. And the substantial evidence that the jurisdiction article mentions, and I'm looking at 1702, Subparagraph A(2), is the substantial evidence concerning the child's present or future care, protection, training, and personal relationships.
Now, of course, it goes without saying that the child can't be in two places at once. That certainly Mr. and Mrs. Devillier can testify and call other witnesses in this parish to testify about what happened with the child when the child lived with them. They can do that. Mr. Smith, if the case is tried in Maine, can call other people to testify about what he does with the child and the history of his relationship with the child since her birth and after the death of her mother. So there is no doubt that each state has significant contacts, or the issue, the interest of the child has significant contacts as far as where is the best place a trial for custody should be.
The Supreme Court in the Revere case says that the significant connection standard is a more flexible one which is based on the strong contacts of the child and the contestant with the state in which the proceeding is commenced, and the standard really provides a best-interest basis for jurisdiction to determine which state has the real legitimate concern as to custody and has superior access to all of the evidence that may concern the child's training, well-being, and personal relationships. So I found that Louisiana is the home state; I will also find that each state has significant contacts with this particular case.
Having found that, it is necessary then to apply the principals stated in the Revere case, which are again enunciated and discussed in a 1991, Second Circuit case, called Tabuchi v. Lingo, 588 So.2d 795. And in that case there is discussion of the rules pronounced in Revere. And citing from that case, the Tabuchi court says on Page 798: A Louisiana court does not possess jurisdiction under the significant connection test merely because some evidence exists here. The Revere court noted that the significant connection test provides a best-interest basis for jurisdiction when Louisiana has a legitimate concern as to custody and has superior access to evidence concerning the child's care, training, well-being, and personal relationships. Similarly, this courtreferring to the Second Circuithas consistently held that jurisdiction under Section 1702(A)(2) rests with the state that has maximum rather than minimum contacts with the child and optimum access to relevant evidence about the child and the family. Even if both states could legitimately claim a significant connection, the law requires a comparative determination as to whether one state has a greater or more recent significant connection with the child. Thus, jurisdiction is proper under the significant contact's argument if it is in the child's best interest to determine custody in Louisiana; and two, the child and at least one parent have a significant connection to Louisiana; and three, a maximum amount of evidence concerning the child is available in Louisiana. And these last statements are citing the Scroth [Schroth v. Schroth] case, 449 So.2d 640, 1984, Fourth Circuit case.
And the thing that is difficult in this particular situation is because the Supreme Court in the Revere case has added another feature to the application of the law. Because in reading the statute it would appear that it's an either/or situation. If you make it through 1702(A)(1), then you don't get to 1701(A)(2).
But the requirement of the Uniform Child Custody Jurisdiction Act is that the court in a jurisdiction issue consider not only the jurisdictional basis of the court that is looking at it, but also the jurisdictional basis of any other court that might have significant connection. So not only am I required to determine if Louisiana has jurisdiction, I'm required to determine if Maine has jurisdiction. And if I reach the conclusion that Maine has significant contacts, even though Louisiana is the home state, then I am required to make the comparative test required and set out *76 by Revere, and the Tabuchi case, because as the Supreme Court says in Revere, even though there is a preferential or descending value test to 1702, that the significant contact state, if there is another, is not required to defer to the home state. So this Court is required to make the comparison, having determined that both states have jurisdiction, this Court then is required to take the significant contacts and determine if it is in the best interest of the child considering the evidence in Louisiana, as opposed to the evidence in Maine, to find that best interest is here.
This Court finds that it is really absolutely clear that the weight of the contacts having to do with the issue of custody of this child is in the State of Maine. The only contact with Louisiana is the residence of the child for a period of time and Mr. and Mrs. Devillier's residence and the fact that they provided care for the child here. All of the other contacts and all of the other information having to do with the fitness of Jeff Smith to continue as a parent to this child are in the State of Maine. So the exception of jurisdiction is granted.

. . . . .
NOTES
[1] Judge Hillary J. Crain, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] La.R.S. 13:1701(5) defines "home state." It provides:

(5) `Home state' means the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned. Periods of temporary absence of any of the named persons are counted as part of the six-month or other period.
[3] We attach as Appendix A the reasons of the trial court.