914 So.2d 34 (2005)
Becky Bouton STELLUTO
v.
Donald Louis STELLUTO.
No. 2005-CC-0074.
Supreme Court of Louisiana.
June 29, 2005.
Rehearing Denied November 29, 2005.
*35 Howard & Reed, D. Douglas Howard, Jr., Danyelle Marie Taylor, for Applicant.
Lowe, Stein, Hoffman, Allweiss & Hauver, David M. Prados, Robert C. Lowe, New Orleans, Mitchell J. Hoffman, for Respondent.
CALOGERO, Chief Justice.
This case arises out of the parties' divorce and attendant efforts to obtain custody of their infant daughter. Applying the Uniform Child Custody Jurisdiction Law ("UCCJL"), La.Rev.Stat. 13:1700 et seq., we must decide whether Louisiana possessed a "significant connection" with the child sufficient to confer subject matter jurisdiction to determine custody by virtue of the mother's status as a Louisiana native and the child's one-week residence in Louisiana. We reverse the court of appeal and find that the Orleans Parish *36 district court possessed jurisdiction under the UCCJL to decide the custody of the parties' child.

Facts and Procedural History
In November 2001, Becky Bouton Stelluto, a surgical nurse and lifelong New Orleans resident, met Donald Stelluto, a history professor from Orange County, California. The couple became engaged in June 2002, and Ms. Stelluto moved to California in September of that year. The Stellutos married in California on November 22, 2002 and took up residence there.[1] Following a difficult pregnancy, Ms. Stelluto gave birth to their daughter, Anna Christina, by Cesarean section on September 25, 2003.[2] For approximately the first two weeks of Anna's life, Ms. Stelluto's mother visited from Louisiana to provide care for Anna and Ms. Stelluto. After Ms. Stelluto's mother returned to Louisiana, Ms. Stelluto was Anna's primary caretaker.
Five weeks after Anna's birth, on October 30, 2003, Ms. Stelluto departed California for Louisiana with Anna, who was still breast-feeding. Mr. Stelluto returned home from work to find his wife and daughter missing, and later discovered a phone message from his wife stating that she had gone to visit her mother in New Orleans. Through later phone messages, Ms. Stelluto conveyed that she and Anna were doing well and would return to California after their visit.
Six days after her departure from California, on November 6, 2003, Ms. Stelluto filed in Civil District Court for the Parish of Orleans a Petition for Divorce, Sole Custody, Child Support, Interim Spousal Support, Permanent Spousal Support, Court Costs, Attorney's Fees, and Injunctive Relief. At the time of this filing, Anna was almost six weeks old, and had lived in Louisiana with her mother for six days, almost one-sixth of her short life. The court set a hearing date of January 13, 2004. Mr. Stelluto was served through the Louisiana long-arm statute on November 13, 2003. Almost a week later, on November 19, 2003, Mr. Stelluto filed a petition in Orange County, California for dissolution of marriage, child custody, injunctive relief, and support. The California court ordered Ms. Stelluto to return Anna to California and set a hearing date of December 10, 2003.
On November 20, 2003, Ms. Stelluto sought injunctive relief, and the New Orleans court issued an ex parte order prohibiting Mr. Stelluto from removing Anna from Louisiana pending further orders. On December 2, 2003, Mr. Stelluto filed in Orleans Parish exceptions of lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, insufficiency of citation and service of process, and unauthorized use of summary proceeding. A hearing on these exceptions was set for January 13, 2004. The Orleans Parish court also conferred with the California judge, and the California proceedings were stayed pending the Orleans Parish court's resolution of the jurisdictional issue alone.[3]
*37 On February 19, 2004, the Orleans Parish court denied Mr. Stelluto's exceptions of lack of subject matter jurisdiction and improper venue for purposes of the custody and visitation claims, but granted these exceptions for purposes of the child support and spousal support claims. Mr. Stelluto's exception of lack of personal jurisdiction was granted. The court also denied the exceptions of insufficiency of service and citation and unauthorized use of a summary proceeding. As the district court explained in a per curiam opinion issued at this court's request, the rulings on Mr. Stelluto's exceptions reflected the district court's conclusion that "Louisiana and California had concurrent jurisdiction over the issues of custody and visitation," but that California alone had jurisdiction to decide child support, spousal support and to administer the community property.
Concerning the issue of subject matter jurisdiction to determine Anna's custody, the court found that jurisdiction existed under La.Rev.Stat. 13:1702(A)(2), because it was in Anna's best interest for the Louisiana court to assume jurisdiction because (i) Anna and her mother had a "significant connection" with Louisiana, and (ii) there was available in Louisiana "substantial evidence concerning [Anna]'s present or future care, protection, training, and personal relationships."[4] The district court reasoned that Anna had a "significant connection" to both California and Louisiana, because there was substantial evidence in both states bearing on Anna's care and relationships. But, the court found that it would not be in Anna's best interest to require Ms. Stelluto to return to California and litigate custody, where Ms. Stelluto would have to contend with "the responsibility of caring for a newborn, no employment or prospect of employment in the near future, and no financial support from her husband." Anna's interest would be better served by permitting the Louisiana court to exercise jurisdiction and hold a hearing on temporary custody, the court found, so that Ms. Stelluto could recover from childbirth and consider her future employment options. The effect of the Louisiana court's declining jurisdiction would be to "deprive[] Ms. Stelluto of reasonable and meaningful access to any court," given her vulnerable state, the court concluded. Thus, the court concluded that Louisiana had concurrent jurisdiction on the basis of "significant connection[s]" under the UCCJL, and that it was in Anna's best interest for Louisiana to exercise jurisdiction.
Mr. Stelluto applied for supervisory writs in the Fourth Circuit, but the court denied the application, finding that he had an adequate remedy on appeal. This court also denied Mr. Stelluto's writ application. Stelluto v. Stelluto, XXXX-XXXX (La.4/21/04), 870 So.2d 280. Mr. Stelluto then filed a Petition and Order for Appeal, *38 which the district court granted. The Fourth Circuit converted Mr. Stelluto's appeal to an application for supervisory writ and granted it.
A five-judge panel of the Fourth Circuit reversed the district court, with one dissent, holding that Louisiana did not possess subject matter jurisdiction under the UCCJL to decide which parent should have custody of Anna. Stelluto v. Stelluto, 04-0755 (La.App. 4 Cir. 12/22/04), 894 So.2d 349, 353. The court initially noted that California was Anna's undisputed home state at the time Ms. Stelluto sought custody. Id. at 352. Nevertheless, the court observed, Louisiana might still be able to exercise concurrent jurisdiction if it satisfied the UCCJL's "significant connection" standard, which would require proof that Louisiana had the strongest connection to the child when suit was filed. Id.
The court conceded that Anna's "tender age" at the time she moved to Louisiana presented a "unique situation" that was relevant to the court's determination of whether Louisiana could exercise significant connection jurisdiction. Id. Such evidence as school records and medical visits, which would be available in the case of an older child, did not exist in Anna's case, the court stated. Id. Despite its expressed concern for the unique case of a six-week-old child, the court found that Louisiana could not exercise significant connection jurisdiction under the UCCJL. The court reasoned that "[a]t the time of filing, Anna had only been in New Orleans for seven days and had no prior contact with Louisiana other than that her mother was a native of New Orleans and that her grandmother resided there." Id. (citing Young v. Young, 95-1300 (La.App. 3 Cir. 3/6/96), 670 So.2d 689, 692-93 and Lopez v. Lopez, 27,330 (La.App. 2 Cir. 9/27/95), 661 So.2d 665, 668). These circumstances alone were insufficient, the court concluded, to confer significant connection jurisdiction under the UCCJL on the Louisiana court. Id.
The Fourth Circuit distinguished Gray v. Gray, 572 So.2d 341 (La.App. 5 Cir. 1990), in which the Fifth Circuit had found that a Louisiana court could exercise subject matter jurisdiction under the UCCJL over custody of a child even though the child had only lived in Louisiana for one month at the time of filing. Id. at 352-53. The Fourth Circuit reasoned that the child in Gray had a more substantial connection to Louisiana because he had visited Louisiana with his mother three times, for three or four weeks each time, during the year that he was living in Texas. Id. at 353.
Judge Murray dissented from the majority's conclusion that Louisiana could not exercise subject matter jurisdiction over Anna's custody. Id. Considering Anna's very young age at the time she came to Louisiana, "the extent of the possible connections between this infant and any state are severely limited," she observed. Id. And, Anna's most important relationship was to her mother, her primary caregiver, Judge Murray reasoned. Id. at 353-54. Thus, Louisiana possessed at least equivalent, if not greater, connections to Anna than California, and Louisiana could exercise jurisdiction under the UCCJL, she concluded. Id. at 354.
Ms. Stelluto applied for supervisory writs in this court, urging that the court of appeal erred in (1) effectively permitting Mr. Stelluto to appeal from a denial of supervisory writs, and (2) finding that Louisiana lacked subject matter jurisdiction under the UCCJL to decide Anna's custody.[5] We granted writs to address *39 these issues. Stelluto v. Stelluto, 05-0074 (La.2/25/05), 894 So.2d 1151.

Discussion

A. Alleged Departure from Proper Procedure
Ms. Stelluto argues that the Fourth Circuit "departed from proper judicial procedure" by converting Mr. Stelluto's appeal to a writ application and granting it, when the court had earlier denied Mr. Stelluto's writ application on the same issue. Ms. Stelluto protests that the Fourth Circuit's action has effectively granted Mr. Stelluto a rehearing from denial of a writ application, an advantage for which the law does not provide.
We find that the Fourth Circuit's conversion of Mr. Stelluto's appeal to a writ application under these circumstances, although unusual, was not improper. The Louisiana Constitution confers appellate jurisdiction upon the courts of appeal over "all civil matters" and "all matters appealed from family and juvenile courts" and supervisory jurisdiction over "cases which arise within its circuit." La. Const. art. V, § 10(A). Moreover, the jurisprudence indicates that the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts. See In re Medical Review Panel of Freed, 05-28 (La.App. 5 Cir. 4/26/05), 902 So.2d 472, at 473 ("[C]onverting appeals to writs will be left to the discretion of the panel."). And, it appears that the courts of appeal, including the Fourth Circuit, exercise their discretion to convert appeals to applications for supervisory writs with regularity, although not necessarily in circumstances like the present case, where the court had previously denied a writ application. See, e.g., State v. Kenner, 04-1809, p. 2 (La.App. 4 Cir. 3/23/05), 900 So.2d 948, 950 (finding that the state's appeal from a judgment granting post-conviction relief was improper, and converting the appeal to an application for supervisory writs). In light of these authorities, we see no reason to interfere with the Fourth Circuit's decision to exercise its discretion to convert Mr. Stelluto's appeal into an application for supervisory writs in this case.

B. Subject Matter Jurisdiction Under the UCCJL
Although a court's general subject matter jurisdiction is established by the Louisiana constitution or by legislation, the UCCJL functions to "graft a second tier of inquiry onto the question of jurisdiction" in custody cases. Amin v. Bakhaty, 01-1967 (La.10/16/01), 798 So.2d 75, 80. The UCCJL imposes jurisdictional limitations that require a court that has general subject matter jurisdiction to decline to exercise it. Id. These limitations further the UCCJL's stated purposes, including avoiding jurisdictional competition, assuring that custody litigation takes place in the state with which the child and his family have the "closest connection" and where relevant evidence is located, promoting a stable home environment, deterring abductions, and encouraging cooperation among the courts of different states. La.Rev. Stat. 13:1700(A); Revere v. Revere, 389 So.2d 1277, 1279 (La.1980) (discussing the UCCJL's purposes).
Consistent with these stated goals, the UCCJL provides four grounds for exercising jurisdiction in a custody case, two of which are relevant here: (1) the forum's status as the child's "home state," and (2) jurisdiction based on the existence of a "significant connection" between the forum, the child, and at least one parent. La.Rev.Stat. 13:1702(A)(1)-(2). For a court to exercise jurisdiction on the basis of either of the above grounds, the child need not be present in the forum state. *40 Id. 13:1702(C). And, although the child's presence in the forum state is "desirable," that presence alone is not sufficient to confer jurisdiction. Id. 13:1702(B).
Thus, although the UCCJL analysis is technically relevant to a court's subject matter jurisdiction, the choice of the optimum jurisdiction to resolve custody battles under the UCCJL focuses on the strength of connections between the child and the competing states, more akin to a personal jurisdiction analysis. Amin, 798 So.2d at 80-81. Because of this focus, this court has rejected the notion that the UCCJL requires deference to the "home state" in every case. Id. at 82 (citing Revere, 389 So.2d at 1279-80). Rather, jurisdiction may exist concurrently in two different states under the home state and significant connection standards. Where two states possess concurrent jurisdiction, this court has directed that the forum conduct "a comparative determination regarding which jurisdiction will serve the best interests of the child." Id. at 83. This determination of the child's best interest is well within the exclusive province of the trial court, and will not be disturbed absent an abuse of discretion. Anderson v. Anderson, 01-53 (La.3/29/05), 788 So.2d 676. In addition, where concurrent jurisdiction exists, the forum court may consider priority of filing. Revere, 389 So.2d at 1280.
Louisiana cannot exercise jurisdiction as Anna's "home state" in this case, because California is her statutory "home state." The UCCJL generally defines "home state" as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as a parent, for at least six consecutive months." La.Rev.Stat. 13:1701(5). Where the child is less than six months old, as Anna was at the time of filing, "home state" is defined as "the state in which the child lived from birth with any of the persons mentioned." Id. In this case, Anna lived "from birth" in California with both of her parents for the first five weeks of her life. Thus, California was Anna's "home state" for purposes of the UCCJL, and Anna's residence in Louisiana for one week with her mother before filing did not change this.
Although Louisiana does not qualify to exercise "home state" jurisdiction, Louisiana nevertheless may possess jurisdiction to determine Anna's custody under the UCCJL on the basis of a "significant connection." To exercise jurisdiction on this basis, the UCCJL requires proof that "[i]t is in the best interest of the child that a [Louisiana court] assume jurisdiction" because (1) Anna and at least one of her parents have a significant connection with Louisiana, and (2) "there is available in [Louisiana] substantial evidence concerning the child's present or future care, protection, training, and personal relationships." Id. 13:1702(A)(2). Whether there is a "significant connection" should be determined based on the available evidence at the time of filing. See, e.g., Lopez, 661 So.2d at 668 (considering evidence of "significant connection" existing at the time of filing of the custody action). And, the goal of the "significant connection" inquiry is to determine which state has "superior" access to relevant evidence. Revere, 389 So.2d at 1279-80.
We find that it is in Anna's best interest in this case for Louisiana to exercise jurisdiction to determine custody on the basis of a "significant connection." The first statutory requirement is satisfied, because Anna and her mother have a "significant connection" to Louisiana. Ms. Stelluto is a New Orleans native, who left Louisiana for California only to marry Mr. Stelluto, a California domiciliary, and who returned to New Orleans a mere 13 months later. *41 While she was in California, Ms. Stelluto maintained her Louisiana driver's license and her Louisiana nursing license. And, Ms. Stelluto was only employed in California briefly, as her difficult pregnancy required her to remain in her home.
Anna likewise had a "significant connection" to Louisiana for purposes of the UCCJL. As the district court judge and the dissenting judge in the court of appeal emphasized, Anna was only weeks old before this custody suit was filed. Although she lived in California longer than she lived in Louisiana (five weeks in California compared to one week in Louisiana), her capacity to form any independent connection to any jurisdiction was limited. Anna's entire experience of the world at such a young age was filtered through her primary caregiver, her mother. Moreover, Anna's "connection" to her mother, a Louisiana native, was quite literal, as Anna was still breast-feeding at the time Ms. Stelluto brought her to Louisiana. Thus, Anna was connected, by virtue of her relationship with her mother, to Louisiana. This relationship, combined with Anna's one-week residence in the state, and the presence of her maternal grandmother (who also provided care for Anna for two of the five weeks she lived in California), suffices to establish a significant connection to Louisiana.
This case is distinguishable from other decisions involving older children in which residence in Louisiana for periods ranging from one day to just over a month did not suffice to establish significant connection jurisdiction. See, e.g., Amin, 798 So.2d at 81 (finding that six-year-old child's residence in Louisiana for one month before filing did not establish a significant connection to Louisiana); Young, 670 So.2d at 690 (finding that an infant's residence in Louisiana for one day with her father was not sufficient to confer significant connection jurisdiction); Lopez, 661 So.2d at 668 (finding that two-year-old child's residence in Louisiana for 37 days before filing was not sufficient to confer subject matter jurisdiction). Here, Anna's infancy and the primacy of her relationship to her primary caregiver, her mother, render Anna's connection to Louisiana based on living here one week more significant than it would have been in the case of an older child. See Gray, 572 So.2d at 343 (holding that the trial court did not manifestly err in determining that Louisiana could exercise significant connection jurisdiction over custody of a one-year-old child who had lived in Louisiana with her primary caretaker for 41 days at the time of filing).
Moreover, roughly equivalent evidence relating to Anna's "future care, protection, training, and personal relationships" was available in Louisiana as in California. As Anna was not of school age, and school records were not available, the most significant evidence relevant to determining her custody concerned her "family relationships of longstanding." Revere, 389 So.2d at 1281. Anna's mother and maternal grandmother, her primary caregivers up to the time of filing, both lived in Louisiana. Although Anna's father and paternal relatives lived in California, we find that fact does not demonstrate that California possessed "superior" access to evidence. And, we note also that the Louisiana custody action was filed first, which tends to bolster the Louisiana court's jurisdiction.
Thus, we reverse the court of appeal and hold that the district court did not abuse its discretion in holding that Louisiana could exercise jurisdiction under the UCCJL to determine custody of Anna on the basis of significant connections.[6] We *42 note that this decision is not substantive, and does not bear on the question of which parent should be ultimately awarded custody of Anna. Rather, we merely decide that the Orleans Parish district court is the appropriate forum to determine Anna's custody.

DECREE
The judgment of the court of appeal reversing the trial court's denial of Mr. Stelluto's exception of lack of subject matter jurisdiction with respect to the custody claim is reversed. The trial court's judgment denying the exception is reinstated, and the case is remanded to the trial court for determination of the custody claim and any other remaining claims.
Reversed and remanded.
KNOLL, J., additionally concurs and assigns reasons.
WEIMER, J., dissents and assigns reasons.
VICTORY and TRAYLOR, JJ., dissent for the reasons assigned by WEIMER, J.
KNOLL, J., assigning additional reasons.
I wholeheartedly agree with the majority opinion in this matter. However, I write to further elaborate on an element of the best interest of the infant daughter.
As the majority points out, Ms. Stellutto breast-fed her daughter from the time of birth and continued to breast-feed the infant when they returned to Louisiana. Not only is the act of breast-feeding a literal connection between the infant and mother, it is an element that bears importance to the best interest inquiry in this jurisdictional determination. As the Louisiana Legislature found "the surgeon general of the United States recommends that babies from birth to one year of age be breastfed, unless medically contraindicated, in order for the babies to attain an optimal healthy start in life." LA.REV.STAT. ANN. § 51:2247.1A(1). Moreover, as further found by the Louisiana Legislature, "breast milk provides better nutrition and more immunity to disease, is easier for babies to digest, and may raise a baby's intelligence quotient." LA.REV.STAT. ANN. § 51:2247.1A(2). Although the parties failed to introduce evidence of this aspect of the case, I find it appropriate to take judicial notice of the Louisiana Legislature's pronouncement in this regard and to recognize this element in the consideration of the best interest of the infant who is central to this jurisdictional dispute.
WEIMER, J., dissenting.
I respectfully dissent.
This matter addresses the legal issue of whether a Louisiana court has jurisdiction over a proceeding to determine custody of the minor, Anna Stelluto, pursuant to the Uniform Child Custody Jurisdiction Law (UCCJL), LSA-R.S. 13:1700, et seq. I agree with the majority that California, not Louisiana, is Anna's "home state."[1] However, I disagree with the majority's *43 determination that it is in the best interest of this child that this state assume jurisdiction because the child and her mother have "a significant connection" with Louisiana. See LSA-R.S. 13:1702(A)(2). Thus, I conclude the court of appeal correctly ruled Mr. Stelluto's exception of lack of subject matter jurisdiction should have been sustained.
Admittedly, because Anna was only five weeks old when Ms. Stelluto moved her to Louisiana, the instant case presents a "close call" as to concurrent jurisdiction in California and Louisiana. However, I would resolve the issue in a manner that is more consistent with the laudable purposes of the UCCJL, as stated in LSA-R.S. 13:1700. In Revere v. Revere, 389 So.2d 1277, 1278-79 (La.1980), this court explained:
The Uniform Child Custody Jurisdiction Law was proposed in an effort to have states impose uniform legislative rules on themselves regarding jurisdiction in child custody cases. A custody decree in one state is subject to modification not only by the courts of that state, but also by the courts of another state, since the Full Faith and Credit clause has limited application in custody cases. In an age of fluid population trends many cases are presented in which jurisdiction may be concurrent in several states. In order to provide some stability to reasoned custody decrees by discouraging relitigation, to deter custody determinations by physical abduction, to avoid jurisdictional competition and conflicting custody decrees in several states, and primarily to attain the security of home environment necessary for a child's well being, the National Conference of Commissioners proposed the uniform law adopted in Louisiana by Act 513 of 1978. [Citations omitted; emphasis supplied.]
Although the UCCJL was enacted to avoid jurisdictional competition, the majority's decision will thwart that purpose and foster forum shopping in order to obtain a "home court advantage."
The connections to Louisiana do not outweigh the connections to California. To the contrary, when viewed side by side, the connections to California are more substantive. Mr. Stelluto's parents and grandmother live fifteen to twenty minutes away from the California residence where Anna lived for the first five weeks of her life. Ms. Stelluto's brother and his partner also live in California, about one hour away. Ms. Stelluto's OB-GYN, who provided pre-natal care, and the infant's pediatrician, as well as three psychologists seen by Mr. and Ms. Stelluto during their marriage, are in California. The couple also had friends, neighbors, church parishioners, a priest, and work colleagues in California. Ms. Stelluto began working as a surgical nurse in that state in March 2003[2], and her best friend from work lived ten minutes away from the Stelluto home. The primary Louisiana connection is that Anna and her mother, a Louisiana native who prior to her marriage to Mr. Stelluto established residency in California, lived in Louisiana for one week prior to the filing of Ms. Stelluto's petition. Further, Anna's maternal grandmother lives in Louisiana. The fact that Louisiana connections pale by comparison, coupled with the fact that California is the home state, should be determinative.
The purpose of LSA-R.S. 13:1702(A)(2) is to limit rather than to proliferate jurisdiction. *44 Counts v. Bracken, 494 So.2d 1275, 1277 (La.App. 2 Cir.1986), citing the Comments to the Uniform Laws Annotated, Vol. 9, § 3. It is the child's interest, not the interest or convenience of the feuding parties, that determines whether custody should be decided in a particular state. The interest of the child is served when the forum has optimum access to relevant evidence about the child and family. Maximum rather than minimum contact with the state is a must. Id. The goal of the significant connection inquiry is to determine which state has superior access to relevant facts. For each piece of relevant evidence in Louisiana there is, at least, an equal piece of relevant evidence in California.
Where two states present legitimate claims of significant connections, the law requires a comparative determination as to whether one state has greater significant connection with the child. Edgeworth v. Edgeworth, 98-57, p. 4 (La.App. 5 Cir. 5/27/98), 712 So.2d 713, 715, writ denied, 98-1754 (La.9/18/98), 724 So.2d 759. Concurrent jurisdiction is designed to provide a significant connection state the option of not deferring to the home state. The concurrent jurisdiction concept should not be extended to a situation where the alleged significant connections of the non-home state are not greater than the significant connections of the home state. See Revere, 389 So.2d at 1282. To hold otherwise is to sanction actions by the parties, such as moving to another state in an attempt to avoid the jurisdiction of the home state, that undermine the purposes of the UCCJA as stated in the legislation. Thus, the focus of this court in the instant case should not be on what significant connections existed after Ms. Stelluto returned to Louisiana with Anna; the focus should be on what significant connections existed during Ms. Stelluto's pregnancy and during the five weeks Anna lived in California before being removed from that state by her mother. California has superior access to relevant evidence because that is where both parents were together, a factor that makes the meager connections in Louisiana for the one week between Ms. Stelluto's return and her filing for divorce and custody irrelevant. "Significant connections" should not be something a party can create by moving to another forum.
Further, all related matters, such as child support and property settlement, must be litigated in California. Litigation in two forums is not conducive to conservation of the finances of the parties. According to Mr. Stelluto, the California courts have proceeded to consider the custody issue and have actually issued some custody orders, requiring Ms. Stelluto's compliance. Thus, judicial economy will not be served by continuing the exercise of concurrent jurisdiction.
For these reasons, I respectfully dissent.
NOTES
[1] While she was living in California, Ms. Stelluto maintained her Louisiana driver's license and nursing license.
[2] Ms. Stelluto's pregnancy was deemed "high-risk" because of her age, history of high blood pressure, and lingering effects of an automobile accident in which she fractured her pelvis. For the last five months of her pregnancy, Ms. Stelluto was placed on bed rest and / or was restricted to the home.
[3] The Orleans Parish court's December 5th minute entry states that

[p]ursuant to the Unified Child Custody Jurisdiction Act, Judge Nancy Stock in California initiated a conference with this Court to confer regarding the appropriate jurisdiction for resolution of these family issues. After several telephone conferences between the jurisdictions, with counsel for the parties present,
It is ordered, adjudged, and decreed that the [January hearing] is converted to a UCCJ[L] hearing on jurisdiction only.
The entry also authorized Mr. Stelluto to exercise visitation in Louisiana with Anna pending the hearing, but prohibited overnight visits outside of Ms. Stelluto's presence.
[4] Although La.Rev.Stat. 13:1702(A)(1) permits the child's "home state," a defined term, to exercise jurisdiction to determine custody, the district court determined that neither California nor Louisiana qualified as Anna's "home state." The court reasoned that Anna, at only six weeks of age, was too young to have acquired a home state when her mother sought custody, and that neither state could demonstrate that it was in a better position for evidence gathering and exercising continuity of control for purposes of claiming "home state" status.
[5] While the writ application was pending, on February 1, 2005, the Orleans Parish court issued a Judgment of Divorce dissolving the parties' marriage.
[6] In so holding, we reject Mr. Stelluto's suggestion that Ms. Stelluto "wrongfully [took] the child from [California]" or "engaged in similar reprehensible conduct" such that Louisiana should decline to exercise jurisdiction under La.Rev.Stat. 13:1707(A). We find, as did the district court judge and the dissenting judge in the court of appeal, that Ms. Stelluto did not abduct Anna or engage in reprehensible conduct, and that Louisiana should not decline jurisdiction on this basis.
[1] "Home state" is defined as "the state in which the child immediately preceding the time involved lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old the state in which the child lived from birth with any of the persons mentioned." LSA-R.S. 13:1701(5).
[2] This fact outweighs the fact noted by the majority that Ms. Stelluto maintained her Louisiana nursing license.