694 So.2d 1217 (1997)
Thomas Leonard ANTON
v.
Susan Bourgeois ANTON.
No. 97-C-0792.
Court of Appeal of Louisiana, Fourth Circuit.
May 14, 1997.
*1218 D. Douglas Howard, Jr., New Orleans, for Defendant/Relator Susan Bourgeois Anton.
Lisa C. Matthews, Maria I. O'Byrne Stephenson, Aimee Lonergan, Stephenson, Matthews, Chavarri & Cerniglia, New Orleans, for Plaintiff/Respondent Thomas Leonard Anton.
Before BYRNES, PLOTKIN and MURRAY, JJ.
MURRAY, Judge.
We grant this writ application to review the trial court's judgment overruling an exception to its jurisdiction in this child custody proceeding. Because no evidence was presented which would support the exercise of jurisdiction, and for the reasons explained below, we vacate the judgment on the exception and remand the matter for further proceedings in accordance with this opinion. The stay order previously entered is hereby vacated.

FACTS AND PROCEDURAL HISTORY
Thomas Anton and Susan Bourgeois were married in New Orleans in 1975 and thereafter established their matrimonial domicile in DeSoto Parish, Louisiana. Two children were born of the marriage, a daughter in 1984 and a son in 1990. The couple separated on June 5, 1994, and a consent judgment regarding ancillary issues was entered into on June 27, 1994. By that judgment, the parents agreed to joint custody of both children, with Ms. Anton designated as domiciliary parent and reasonable visitation privileges for Mr. Anton. Shortly thereafter, Mr. Anton moved to New Orleans and Ms. Anton and the children went to her parents' vacation home in North Carolina. While Mr. Anton asserts that he then believed the out-of-state trip was to be temporary, he *1219 acknowledges that his children have resided with their mother in North Carolina since July 11, 1994. After a rule for contempt and for specific visitation[1] was filed by Mr. Anton in October 1994, a judgment of divorce was entered in DeSoto Parish on December 12, 1994.
On September 26, 1996, Mr. Anton instituted this action in Orleans Parish Civil District Court for modification of the original custody arrangement, alleging that his former wife was denying him reasonable visitation and poisoning his relationship with his children. Ms. Anton responded with an exception of lack of jurisdiction[2] under La.R.S. 13:1702 of the Uniform Child Custody Jurisdiction Act (UCCJA), contending that this proceeding belonged in North Carolina, where the children have been domiciled for more than two years. She argued alternatively that Louisiana should decline to exercise jurisdiction as an inconvenient forum under La.R.S. 13:1706. Mr. Anton filed a written opposition to the exception, asserting that R.S. 13:1700 et seq. was preempted under these facts by 28 U.S.C. § 1738A. He contended that this federal statute conferred "exclusive, continuing modification jurisdiction upon the state which rendered the initial decree, as long as the child or one of the contestants remains in that state."
After hearing oral arguments, the trial court overruled the exception, finding that because Mr. Anton remained in this state where the initial decree was rendered, continuing jurisdiction existed under 28 U.S.C. § 1738A (d) as well as La.R.S. 13:1702 A(2). The court noted that North Carolina was involved only because Ms. Anton had physically removed the children from Louisiana, and that no court in this state had declined jurisdiction. This timely writ application followed,[3] including notice to this court that subsequent to the filing of her exception, Ms. Anton instituted custody proceedings in Transylvania County, North Carolina.[4]

DISCUSSION
28 U.S.C. § 1738A, also known as the Parental Kidnapping Prevention Act (PKPA), provides in pertinent part:
(a) The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.
(b) [Definitions omitted]
(c) A child custody determination made by a court of a State is consistent with the provisions of this section only if
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State *1220 assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) [Emergency provisions omitted]
(D) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.
(e) [Notice provisions omitted]
(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if
(1) it has jurisdiction to make such a child custody determination; and
(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.
(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.
Mr. Anton argues, and the trial court found, that Louisiana has retained jurisdiction under subsection (d) of this Act, and because this state has not declined to exercise that jurisdiction, North Carolina would be prohibited by subsection (a) of the federal statute from modifying the DeSoto Parish custody decree because the requirements of subsection (f)(2) are not met. However, we find the court erred as a matter of law in reaching this conclusion.
The PKPA was enacted in 1980 "to require all states to conform to the provisions of the UCCJA," which was adopted by this state in 1978 as R.S. 13:1700 et seq. Fuge v. Uiterwyk, 613 So.2d 717, 719 (La.App. 4th Cir.), writs denied, 619 So.2d 574 (La.1993) (citing Rogers v. Platt, 814 F.2d 683, 687 (D.C.Cir.1987)). The definitions of the terms used in both statutes are substantively identical, and under either the federal or state provision, North Carolina is now the "home state" of the Anton children because they have lived there for more than six months.[5]Compare 28 U.S.C. § 1738A (b)(1-8) with R.S. 13:1701 (1-10). Accordingly, Louisiana may entertain these proceedings only under subsection (d), which requires one contestant's presence in this state AND that the court at issue "has jurisdiction under the law of such State" as specified in subsection (c)(1). Therefore, contrary to Mr. Anton's argument, the PKPA does not confer an independent basis for jurisdiction, but instead mandates reference to Louisiana law to determine if continuing jurisdiction exists.
With its adoption of the UCCJA, Louisiana has, with limited exception, restricted its jurisdiction in interstate custody disputes to two situations: those in which it is the child's home state, La.R.S. 13:1702 A(1), and those in which there is a significant connection between this state, the child and at least one contestant, La.R.S. 13:1702 A(2). Revere v. Revere, 389 So.2d 1277, 1279 (La. *1221 1980); Fuge v. Uiterwyk, 542 So.2d 726, 728 (La.App. 4th Cir.1989). Additionally, even if the jurisdictional criteria of § 1702 are met, a Louisiana court may transfer or dismiss a custody proceeding if the best interests of the child indicate that another forum would be more convenient. La.R.S. 13:1706; Washington v. Washington, 562 So.2d 1091, 1093 (La.App. 4th Cir.1990); Nielsen v. Nielsen, 472 So.2d 133, 135-36 (La.App. 5th Cir. 1985).
Because Louisiana is not the Anton children's home state, this state will have jurisdiction if the "significant connection" requirement of § 1702 A(2) is met. Under this standard, it must be shown:
1. That it is in the child's best interest to determine custody in Louisiana;
2. That the child and at least one parent have a significant connection to Louisiana, and
3. That there must be available in Louisiana the maximum amount of evidence concerning the child.
Schroth v. Schroth, 449 So.2d 640, 642 (La. App. 4th Cir.1984). In order to meet the third requirement, it must be established that Louisiana "has superior access to evidence concerning the child's care, training, well being and personal relationships." Revere, 389 So.2d at 1279-80 (emphasis added); see also Broadway v. Broadway, 623 So.2d 185, 189 (La.App. 2d Cir.1993).
In this case, the parties agree that because the initial custody decree was entered by consent in DeSoto Parish, no information developed in prior proceedings is available in Louisiana. Ms. Anton contends that virtually all evidence relevant to the children's care and relationships is now in North Carolina, where they have lived for the past two years. Mr. Anton argues, on the other hand, that because he is seeking to assume custody or increase his visitation with the children, evidence of their future care must necessarily be more accessible at his domicile in Orleans Parish. Both parties have offered only argument on this issue, however.
Because no evidence or testimony was presented on the exception, we find that the trial court erred in determining that this state continues to have jurisdiction under the UC CJA and, thus, the PKPA. In order to reach a considered decision as to whether litigation in Louisiana is in the children's best interests, the court below must require the parties to substantiate their claims as to the availability of evidence under § 1702 A(2), based upon the issues raised and relief demanded by Mr. Anton's petition. Additionally, because custody proceedings are apparently pending in North Carolina, La.R.S. 13:1705 requires that the trial court communicate with that tribunal before a determination is made that Louisiana has jurisdiction and is the most convenient forum for these proceedings. Ehsani v. Ehsani, 519 So.2d 288, 291 (La.App. 5th Cir.), writ denied, 520 So.2d 754 (La.1988).

CONCLUSION
For these reasons, the judgment overruling Ms. Anton's exception to the court's subject matter jurisdiction is vacated. The matter is remanded for the trial court's communication with the court in Transylvania County, North Carolina for exchanging information pursuant to La.R.S. 13:1718-21, and for an evidentiary hearing in accordance with this opinion. The court shall thereafter apply the standards of La.R.S. 13:1702 A(2) and 13:1706 to determine whether Louisiana has continuing jurisdiction under 28 U.S.C. § 1738A (d) and, if so, whether the exercise of that jurisdiction should be declined in accordance with 28 U.S.C. § 1738A (f)(2).
WRIT APPLICATION GRANTED, STAY ORDER VACATED; JUDGMENT VACATED, MATTER REMANDED.
BYRNES, J., concurs with reasons.
BYRNES, Judge, concurring with reasons.
I agree with the majority opinion in its entirety and concur merely for the purpose of amplification.
The jurisprudence indicates that jurisdiction may exist concurrently in more than one state under the home state and significant connection standards. Revere v. Revere, 389 So.2d 1277, 1280 (La.1980); Schroth v. *1222 Schroth, 449 So.2d 640, 642 (La.App. 4 Cir. 1984); Broadway v. Broadway, 623 So.2d 185, 189 (La.App. 2 Cir.1993).
However, I wish to emphasize that the proper forum is the one with "optimum access to relevant evidence about the child and family." Schroth, 449 So.2d at 643. A Louisiana court does not possess jurisdiction under the "significant connection" test merely because some evidence exists here. Broadway, 623 So.2d at 189. "[T] he law requires a comparative determination as to whether one state has a greater or more recent significant connection with the child." (Emphasis added.) Id.
This reference to "more recent" or "most recent" as a crucial factor for preferring home state jurisdiction generally, is a common, and apparently determinative thread running through these cases. As this Court noted in Schroth, 449 So.2d at 643:
New Jersey has optimum access to the most recent and relevant evidence and witnesses concerning the child's community, circumstances, health, and personal relationships. Besides New Jersey's being the home state it also has the more significant connection to the child. [Emphasis added.]
Following this line of thinking, it would be most unusual for Louisiana to find that its "significant connection" outweighs the interests of the "home state" when defined in terms of optimum access to recent relevant evidence. Therefore, it should be no surprise that where our jurisprudence speaks in terms of the theoretical jurisdictional tension between "significant connection" jurisdiction here and "home state" jurisdiction elsewhere, the final result invariably favors "home state" jurisdiction elsewhere.
Mr. Anton latches on to the fact that LSA-R.S. 13:1702A(2)(ii) and 28 U.S.C. Sec. 1738A(C)(2)(B)(ii)(11) both speak in terms of "evidence concerning the child's present or future case ..." Mr. Anton argues that because he wants custody or more visitation with the children here in Louisiana, evidence of future care must necessarily be more accessible at his domicile in Orleans Parish. Mr. Anton attempts to pull himself up by his bootstraps with this argument as it pre-supposes that custody will be awarded to him. As it is at least as likely, if not more likely, that Mrs. Anton will retain custody in the home state, evidence of future care may be obtained there, as well as virtually all evidence of present care. To put it another way, Mr. Anton's argument about what "future care" means is illogical as it would always automatically favor the party seeking a change in custody, whereas the purpose of the statutes is to "limit jurisdiction rather than proliferate it." Broadway, 623 So.2d at 189. Moreover, stability of environment is a factor to be considered in evaluating a change. Id.
I make these comments because the trial court's actions which led to this writ seem to demonstrate a view inconsistent with the standards I have described and I wish to prevent a recurrence of such error on remand.
NOTES
[1] This court has no information as to the outcome of this rule.
[2] While the caption of her exception included a reference to improper venue, there is no indication that Ms. Anton presented any argument in the court below on this issue. Mr. Anton asserted in his petition that venue exists in Orleans Parish under Article 74.2 B of the Code of Civil Procedure, while Ms. Anton now argues that venue "should be" in DeSoto Parish under St. Amant v. St. Amant, 564 So.2d 1312 (La.App. 1st Cir.), writ denied, 567 So.2d 622 (La. 1990). Because we find error in the trial court's determination as to jurisdiction, we need not address the issue of venue at this time.
[3] Although Ms. Anton was granted until April 18 to file this application, a hearing on rules for custody and evaluation was scheduled for April 15, 1997. This court therefore stayed all proceedings pending our determination on the jurisdictional issue.
[4] It is unknown whether the trial court was given notice of the North Carolina proceedings as required by La.R.S. 13:1708.
[5] Notwithstanding the trial court's reference to Ms. Anton's "removal" of these children from this state, there is no indication that Mr. Anton has previously challenged his ex-wife's legal right to reside with the children in North Carolina. Mr. Anton has not argued, nor is there any evidence to suggest, that the North Carolina domicile was established for any improper or illegal purpose.