PEATROSS, J.
11 Shelia Joplin appeals from a judgment dismissing her rule to show cause on the grounds that Louisiana was not the proper forum to decide the matters raised therein. For the reasons stated herein, we reverse and remand.

FACTS

Shelia and William C. Joplin, Sr., were married in Arkansas; during their marriage, the couple lived in Arkansas and adopted William’s four grandchildren. The Joplins divorced in Lonoke County, Arkansas in 1999. In the divorce, the Arkansas court granted the Joplins joint custody of the minor children; Ms. Joplin was designated the primary caretaker. Mr. Joplin was further ordered to pay $174 per week in child support. The Arkansas judgment specified:
This Court doth retain control and jurisdiction over the parties and the subject matter for such further orders that it may deem necessary in order to enforce the rights of the parties hereto.
Subsequently, Ms. Joplin and the children moved to Bossier Parish, Louisiana; Mr. Joplin remained a resident of Arkansas.
In 2000, Ms. Joplin filed a petition in Louisiana (the 26th Judicial District Court (“26th JDC”)) seeking to have the divorce decree made executory in Louisiana and asking that the court allow Mr. Joplin only supervised visitation of the children. Mr. Joplin responded with an exception of subject matter jurisdiction, urging that he lived in Mena, Arkansas. In September 2000, the 26th JDC dismissed Ms. Joplin’s petition by stipulation and agreement of the parties.
li>On November 19, 2004, Ms. Joplin filed a second petition in the 26th JDC. The petition stated that both of the Joplins “have resided in Bossier Parish, Louisiana, for well over 1 year.” Mr. Joplin stipulated that, at the time the petition was filed, he lived in Benton, Louisiana; but, after the petition was filed, he returned to live in Arkansas. Mr. Joplin apparently moved to Lewisville, Arkansas, not his previous residence of Mena.[1] He also stipulated that the children had been living with Ms. Joplin in Bossier Parish for more than six months.
In her petition, Ms. Joplin again asked the court to make the Arkansas judgment of divorce executory in Louisiana and to allow Mr. Joplin only supervised visitation of the children. This latter request was based on Ms. Joplin’s allegations that Mr. Joplin was unable to properly supervise the children during his visitation and that “it has been alleged that” Mr. Joplin physically and/or verbally abused at least one of the children. Ms. Joplin further alleged *416 that she was entitled to an increase in the amount of child support she receives for the children, all of whom remain minors.
Mr. Joplin again responded with an exception of lack of subject matter jurisdiction. He urged that the courts of Arkansas retained jurisdiction over the ease, that Ms. Joplin had raised essentially these same demands in 2002 in the Lonoke County, Arkansas court where they were rejected, and that the Louisiana court should not exercise jurisdiction.
On May 19, 2005, the 26th JDC heard argument on the jurisdictional issue, which, at the hearing, was expanded to include argument that ^Louisiana was an inconvenient forum for the dispute. Argument was focused on the child custody and support dispute, not the other matters raised by Ms. Joplin’s petition. After reciting the procedural history of the case, Mr. Joplin’s attorney presented the court with a series of five documents from the 2002 proceedings in Lonoke County Chancery Court in Arkansas. Ms. Joplin’s attorney objected to the court’s consideration of the documents because they were uncertified by the Arkansas Court and because they contained hearsay. The documents appear to be copies and bear no certification of authenticity from the Arkansas Court. The court admitted the documents into evidence over Ms. Joplin’s objection solely for the purpose of showing, as Mr. Joplin’s attorney stated, “the nature, extent and degree of the litigation that was engaged in” in Arkansas.
Although it. was suggested during the hearing that other evidence would be adduced later in the proceeding, no other evidence was admitted. Ms. Joplin’s attorney stated that Ms. Joplin’s testimony would show, among other things, that Mr. Joplin was living in Louisiana at the time the 2004 petition was filed and had lived here since 2001, that Mr. Joplin only moved back to Arkansas after being served with the 2004 Louisiana petition and that the children had seen mental health professionals here in Louisiana since the Arkansas proceedings. After this argument, Mr. Joplin’s attorney made the stipulation that Mr. Joplin did live in Louisiana at the time the petition was filed and moved back to Arkansas after the filing.
The documents from the Arkansas trial court showed that, in February 2001, Ms. Joplin sought essentially the identical relief in Arkansas that she |4had asked for in Louisiana in 2004. The documents also included the report from a court-ordered mental health evaluation of the parties. The Arkansas court held a trial in May 2002. In August 2002, the Arkansas court denied Ms. Joplin’s demands for an increase in child support and supervised visitation for Mr. Joplin.
In response to the evidence from the Arkansas court, Ms. Joplin urged that “there have been extensive circumstances that have happened since then [2002].” However, the Louisiana district court decided that the Arkansas court was the proper forum for this dispute. On July 18, 2005, the 26th JDC signed a judgment dismissing Ms. Joplin’s action, and she now appeals.[2]

DISCUSSION

On appeal, appellant asserts three assignments of error:
1. Were appellee / plaintiffs exhibits number one through five inadmissible as evidence due to issues involving au *417 thenticity and hearsay, and should the trial court have relied on these exhibits in its ruling due to those issiies.

2. Was the trial court in error in ruling on the issue before it, without allowing appellant to present testimony and evidence referred to in the opening statement.

3. Was the trial court in error in issuing a ruling under La. R.S. 13:1706 without allowing for presentation of evidence that is relevant under said law.

Assignment of Error No. 1: Evidence of Arkansas Court Proceedings.

La. C.E. art. 902(2)(a) provides:
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:
_k * * *
(2) Domestic public documents not under seal, (a) Domestic public documents generally. A document purporting to bear the signature in his official capacity of an officer or employee of [any state], having no seal, if a public officer having a seal and having official duties in the district or political subdivision of the officer or employee certifies under seal that the signer has the official capacity and that the signature is genuine.
The documents in question do not bear any signature of a representative of the Arkansas authority with custody of the documents, so the documents were not admissible under this article in the absence of extrinsic evidence of authenticity. Likewise, the matters in. the mental health evaluation/report are arguably excludable as hearsay. La. C.E. art. 1101(B)(2), however, provides:
B. Limited applicability. Except as otherwise provided by Article 1101(A)(2) and other legislation, in the following proceedings, the principles underlying this Code shall serve as guides to the admissibility of evidence. The specific exclusionary rules and other provisions, however, shall be applied only to the extent that they tend to promote the purposes of the proceeding.
[[Image here]]
(2) Child custody cases.
As noted by Mr. Joplin in brief, Ms. Joplin generally agreed with his presentation of the chronology of this litigation, so the same or similar facts established by the court pleadings were admitted to by both litigants and were not contested. The mental health evaluation was not accepted for its contents, but only to show the nature, extent and degree of litigation in Arkansas. Indeed, all of the evidence was admitted solely for the purpose of determining the history of the proceedings between the parties, and Ms. Joplin did not argue either that the proceedings in Arkansas had not taken |fiplace, or that the Arkansas documents were inaccurate reflections of what happened in that state’s courts. Under the circumstances, we find no reversible error in the trial court’s consideration of these documents for the purpose of determining the history of this litigation.
Assignment of Error No. 2: Failure to Hear Evidence.
Ms. Joplin urges that the trial court should not have entered a ruling in this matter without hearing her testimony, especially regarding Mr. Joplin’s place of residence. Compare, e.g., Anton v. Anton, 97-0792 (La.App. 4th Cir.5/14/97), 694 So.2d 1217; see also DeLee v. Koss, 430 So.2d 196 (La.App. 2d Cir.1983). We note that most of the matters of importance to the trial court’s decision were stipulated by the parties; Mr. Joplin stipulated that he *418 lived in Bossier Parish, Louisiana, when the 2004 petition was filed and only thereafter moved back to Arkansas. We note that Mr. Joplin did not explicitly stipulate that he lived in Lewisville, Arkansas; he only stipulated to residence in Arkansas. Nevertheless, his current site of residence in Lewisville was apparently undisputed. Moreover, only a few facts were seriously contested by the parties; for example, Mr. Joplin asserted through counsel that Ms. Joplin told him that she intended to relocate to south Louisiana; through counsel, Ms. Joplin denied making this statement. The potential move was not considered by the court. Under the circumstances, it appears that the court had adequate information to make a decision, so the court’s failure to hear testimony was not a reversible error.
|vAssignment of Error No. 3: UCCJA/In-convenient Forum.
In the case sub judice, the 26th JDC concluded that it had jurisdiction over this dispute, but declined to exercise that jurisdiction because the Arkansas forum was more convenient. Child custody disputes brought in Louisiana and having connections to other states involve the application of the Uniform Child Custody Jurisdiction Act (“UCCJA”).[3] La. R.S. 13:1700 provides, in part:
A. The general purposes of this part are to:
[[Image here]]
(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child.
⅜ ⅜ *
(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible.
La. R.S. 13:1706 provides, in part:
A. A court which has jurisdiction under this Part to make an initial or modification decree may decline to exercise its jurisdiction any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum.
* * *
C. In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
(1) If another state is or recently was the child’s home state.
|s(2) If another state has a closer connection with the child and his family or with the child and one or more of the contestants.
(3) If substantial evidence concerning the child’s present or future care, protection, training, and personal relationships is more readily available in another state.
(4) If the parties have agreed on another forum which is no less appropriate, and
(5) If the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in Section 1700.
*419 An appellate court may not set aside a trial court’s or jury’s findings of fact in absence of manifest error or unless it is clearly wrong. Stobart v. State, Through DOTD, 617 So.2d 880 (La.1993); Rosell v. ESCO, 549 So.2d 840 (La.1989). When the court of appeal finds that a reversible error of law or manifest error of material fact was made in the trial court, however, it is required to redetermine the facts de novo from the entire record and render a judgment on the merits. Rosell, supra.
With reference to the general purposes of the UCCJA referenced in La. R.S. 13:1706(C)(5), the court opined that continued litigation in Louisiana would be viola-tive of La. R.S. 13:1700(A)(4) and (6). Although we defer to the findings of fact made by the trial court, the trial court’s conclusions of law concerning these provisions are not entitled to deference, and we hold that the trial court erred in concluding that the purposes stated in La. R.S. 13:1700(A)(4) and (6) would be impaired by litigation in Louisiana.
19With regard to subsection (A)(4), in this case, the choice of Louisiana or Arkansas as a forum for this litigation has no bearing upon the stability of the children’s home environment and the security of the children’s family relationships. In either forum, litigation will continue, and the choice of the state the litigation occurs in will have no measurable effect on the stability of the children’s environment or the security of their family relationships. There is no indication that litigation in Louisiana will result in the transfer of the children’s domicile to Arkansas. In the instant case, it is the continuation of the litigation, and not its forum, that potentially threatens the goals of stability and security.
With regard to subsection (A)(6), there was some evidence to indicate that litigation in Louisiana would be a “relitigation” of matters already decided in Arkansas.. Clearly the Lonoke County, Arkansas [4] court held a contested proceeding in 2001 and 2002 on these issues and ruled against Ms. Joplin. The limited evidence available in this record[5] suggests that this proceeding was thorough and that the court’s decision was based upon the best evidence available at the time. Ms. Joplin, however, urged that the family situation has changed since the 2002 litigation in Arkansas. Custody awards may be modified upon a proper showing, and a change in circumstances is one basis for such a modification. Cook v. Cook, 40,572 (La.App. 2d Cir.1/25/06), 920 So.2d 981. Ms. Joplin has made a variety [inof allegations in her petition that unsupervised visitation by Mr. Joplin is deleterious to the children, and the best interest of the children is paramount in these cases. It is the nature of child custody cases that situations continually change and custody and visitation issues resurface from time to time. The raising of new allegations, i.e., changes in circumstances that, have arisen since the 2002 Arkansas judgment, does not constitute relitigation as contemplated under subsection (A)(6). Accordingly, we note that the evidence presented at any subsequent hearing herein will necessarily be limited to allegations of behavior or *420 changes in circumstances that have occurred since the 2002 Arkansas judgment.[6]
Even if the “relitigation” factor were present in this case, the remaining factors in La. R.S. 13:1706(C) strongly militate in favor of the convenience of the Louisiana forum. None of the parties currently live in or around Lonoke County, Arkansas, which is close to Little Rock. Mr. Joplin lived in Bossier Parish until after this litigation was initiated in 2004 and now lives only just across the state line in southwest Arkansas, closer to Bossier Parish, Louisiana, than Lonoke County, Arkansas. The evidence showed that Louisiana was the home state of the children; and, since the children had lived with their adoptive mother in Louisiana for several years prior to this litigation, Arkansas did not have a closer connection with the children and one of the contestants. The psychologist who examined the parties and the children in the 2002 Arkansas proceedings is located in Arkansas, although this evidence is now several years old. We do not know Inwhether any more recent professional evaluation of the parties is available; allegedly the children had recently been seen by a Louisiana psychologist. Since the children have now lived in Bossier Parish for several years with their adoptive mother and, for at least some of this time, their adoptive father, Louisiana is clearly a more convenient forum than Arkansas for litigation of this dispute.[7]
Although stability of judgments is a valid aim, this factor alone is wholly insufficient here to overcome the many other factors in favor of the convenience of litigation of this matter in Louisiana rather than Arkansas. Given the record as a whole, the trial court was clearly wrong to hold otherwise.

CONCLUSION

For the above assigned reasons, the trial court’s decision to decline jurisdiction based upon La. R.S. 13:1706 is hereby reversed and this matter is remanded to the district court for further proceedings. Costs of this appeal are assessed to Mr. Joplin.
REVERSED AND REMANDED.

. We take judicial notice that Mena is in Polk County, Arkansas, and Lewisville is in Lafayette County, Arkansas.

. We consider this appeal to be timely under the rationale expressed in Ellis v. Ellis, 39,942 (La.App. 2d Cir.3/31/05), 896 So.2d 1288, writ denied, 05-2363 (La.3/17/06), 925 So.2d 546.

. The decision below did not refer to the Parental Kidnaping Prevention Act ("PKPA”), 28 U.S.C. § 1738A.

. We do not afford importance to the Arkansas court’s statement in 1999 that it retained jurisdiction over the case; the provisions of the UCCJA control given the variety of changes of residence that have occurred since 1999.

. Given that the evidence in this matter was introduced only for the purpose of showing the extent of the proceedings in Arkansas, we decline to consider the substance of the mental health report, which substance is argued by appellee in brief.

. We note that any subsequent action to modify the Arkansas custody judgment will be subject to the standard set forth in Bergeron v. Bergeron, 492 So.2d 1193 (La.1986).

. Again, we do not address the application of the PKPA because that did not form the basis of the trial court’s decision.