STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2021 CA 1466

*JEW*

SUCCESSION OF WILLIE B. SAUCIER

JUDGMENT RENDERED: ___**JUN 2 9 2022**___

*Mut.*

* * * * * * *

Appealed from
The Twenty-First Judicial District Court
Parish of Livingston • State of Louisiana
Docket Number 17,272 • Division C

The Honorable Erika W. Sledge, Presiding Judge

* * * * * * *

Dennis M. Laborde
Barataria, Louisiana
Julie Quinn
Baton Rouge, Louisiana

COUNSEL FOR APPELLANT
PLAINTIFF—Peggy L. Saucier

Wendy L. Edwards
John P. Aydell
Baton Rouge, Louisiana

COUNSEL FOR APPELLEES
DEFENDANTS—
Christopher J. Saucier, Jonathan
P. Saucier, Kenneth W. Saucier,
and Carl A. Saucier

* * * * * * *

BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.

*PMc by JEW*
*Mc Clendon J. agrees in part and dissents in part with reasons*

**WELCH, J.**

Peggy L. Saucier appeals a judgment of the trial court, which denied her claim for reimbursement against the Succession of Willie B. Saucier ("the succession"), classified three specific bank accounts as co-owned by her and the succession, and classified "all assets purchased from" those three specific bank accounts as co-owned by Peggy and the succession. For reasons that follow, we dismiss this appeal.

## BACKGROUND

Willie B. Saucier died on December 12, 2018. At the time of his death, he was married to Peggy. Willie had four children from a prior marriage that survived him: Christopher Saucier, Jonathan Saucier, Carl A. Saucier, and Kenneth W. Saucier (collectively "the surviving children").

Prior to Peggy and Willie's marriage, on January 19, 2005, they executed a pre-nuptial agreement, establishing a separate property regime and renouncing the legal regime of the community of acquets and gains. The pre-nuptial agreement specifically set forth that Peggy's separate property included a "Transamerica Life Insurance Co. (Annuity) Policy ...." The pre-nuptial agreement also provided:

> [Peggy and Willie] may maintain one or more joint accounts into which they may, from time to time, voluntarily deposit their separate property funds to be used to defray the expenses of the marriage. [Peggy and Willie] may agree between themselves as to how and to when to contribute to these accounts. [Peggy and Willie] agree that purchases made with funds in these accounts shall be presumed to be owned equally by [Peggy and Willie] unless purchases made from these accounts are with separate funds that have been voluntarily placed in these accounts with the specific intent to remain separate or to purchases made from these accounts with separate funds that have been improperly placed in these accounts by an agent or legal representative of [the spouse] whose separate funds have been so placed in these accounts."

Several months after Willie's death, on June 20, 2019, Peggy filed a petition to open the succession. Therein, she alleged that Willie died intestate, that more than ten days had elapsed since his death, and that no one had applied to serve as

2

administrator of the succession. Therefore, she requested that she be appointed independent adminstratix of the succession, without bond. However, no order appointing Peggy as administratix—independent or otherwise—was signed by the trial court, no oath of office was signed by Peggy, and no letters of independent administration (or otherwise) were issued to her by the Clerk of Court. Nevertheless, on August 27, 2019, Peggy filed a sworn detailed descriptive list of assets and liabilities of the succession, along with a motion and order that it be placed under seal, which the trial court granted.

According to the sworn detailed descriptive filed by Peggy, Willie's assets included: a 50% interest in various real estate, which had a total value of $119,150.00; a 50% interest in various stocks, bonds, and brokerage accounts, which had a total value of $108,928.41; a 50% interest in cash and cash equivalents, which had a total value of $148,810.49; a 50% interest in miscellaneous property, which had a total value of $25,934.50; and a 100% interest in miscellaneous property, which had a total value of $8,939.00. Peggy also listed the following as Willie's liabilities: funeral expenses in the total amount of $9,474.39, administrative expenses in the amount of $600.00, and debts in the total amount of $273,995.08. Included in the list of debts was a debt in the amount of $272,054.09 for "Reimbursement of One-Half of Separate Transamerica Funds due Peggy Saucier (Total: $544,108.19)."

On October 7, 2019, the surviving children filed a combined motion to oppose Peggy's request to be appointed independent administratrix, to strike the sworn detailed descriptive list filed by Peggy, to vacate the order that the sworn detailed descriptive list be sealed, and to appoint Christopher as independent administrator of the succession. In objecting to Peggy's appointment as independent administrator, the surviving children noted that Peggy, while holding herself out as independent administratrix, filed a sworn detailed descriptive list that

3

listed herself as a creditor of the succession for a significant sum of money. The surviving children alleged that prior to Peggy's and Willie's marriage, they executed a separate property agreement, and that under the terms of that agreement, Peggy was not a successor to any assets of the succession. They further requested that, since Peggy was not appointed independent administratrix, her sworn detailed descriptive list should be stricken and the order that it be sealed should be vacated. Lastly, the surviving children asserted that Christopher should be appointed independent administrator of the succession, that he met all qualifications to serve as independent administrator, and that he would accept the appointment if granted by the trial court.

At a hearing on the pending motions, Peggy and the surviving children entered into a stipulated judgment wherein Peggy withdrew and recalled her request for appointment as administratrix; the surviving children withdrew their motion to strike the sworn detailed descriptive list filed by Peggy, with the proviso that the assertions set forth in Peggy's sworn detailed descriptive list were not to be afforded the presumption of correctness or prima facie proof of the matters asserted therein under La. C.C.P. art. 3137; Christopher was appointed as independent administrator of the succession, without bond, and the Clerk of Court would issue Letters of Independent Administration to him upon his compliance with law, including taking the Oath of Office; pending further order of the court or unless the parties agreed otherwise; Peggy would be permitted to maintain exclusive residency in the former matrimonial domicile and would be responsible for maintaining fire and liability insurance coverage and paying property taxes on the home while occupying it; and the funds in two specific bank accounts—a checking and a savings account—as well as any accounts determined to be jointly in the name of Peggy and Willie or co-owned by them, were frozen until further order of the court or until the parties agreed otherwise in writing.

On February 22, 2021, Peggy filed a formal proof of claim against the succession in the amount of $544,108.19 for her "separate funds [that were] deposited into a joint account ...."

On May 21, 2021, Christopher filed a sworn detailed descriptive list of assets and liabilities of the succession and a concurrence and traversal to certain entries on Peggy's detailed descriptive list. According to the sworn detailed descriptive list filed by Christopher, Willie had the following assets: a 50% interest in various real estate with a total value of $119,150.00; a 50% interest in various stocks, bonds, and brokerage accounts with a total value of $108,928.41; a 50% interests in cash and cash equivalents with a total value of $148,810.49; a 50% interest in miscellaneous property with a total value of $25,934.50; and a 100% interest in miscellaneous property valued at $8,939.00. In the detailed descriptive list, Christopher set forth that he concurred with the listing of the assets and their values set forth in Peggy's detailed descriptive list, and the listed liabilities for funeral expenses and a credit card. However, Christopher traversed the debt that Peggy listed for the sum of $272,054.09 for reimbursement for one-half of her separate Transamerica Funds, as well as other debts that she listed totaling $1,848.00. In addition, Christopher submitted additional liabilities and debts of the succession for legal fees and costs, and administrator's fees.

That same date, May 21, 2021, the surviving children filed a traversal to Peggy's previously filed sworn detailed descriptive list, for the purpose of opposing and traversing the debt Peggy listed for reimbursement for one-half of her separate Transamerica Funds in the amount of $272,054.09. The surviving children noted that Peggy had filed a proof of claim against the succession in the amount of $544,108.19 (twice the amount of her reimbursement claim) and that Christopher, as the administrator of the succession, had rejected that claim, and the

5

surviving children specifically set forth that they opposed Peggy's claim in this regard.

A trial on Peggy's proof of claim and/or reimbursement claim was held on June 1, 2021. The trial court took the matter under advisement, and thereafter, on July 7, 2021, issued written reasons for judgment. In its written reasons for judgment, the trial court noted:

> [t]here was no dispute at trial that the parties entered into a Prenuptial Agreement on January 19, 2005. The pre-nuptial agreement provided for the deposit of separate funds into a joint banking or investment account to "defray the expenses of the marriage[."] Further, it also provided that any purchases made from the joint accounts were "presumed to be owned equally."

The trial court further noted that according to Peggy's testimony at trial, she maintained separate accounts during the marriage. However, the evidence established that three specific accounts (a checking, a savings, and an investment account) listed on the detailed descriptive list were joint accounts, and rather than depositing her separate funds into her separate accounts, Peggy deposited $544,108.19 of her separate funds from the Transamerica policy into joint accounts and these funds were used in part for home remodeling, to purchase movables and real estate together, and for customary living expenses of the marriage.

Based on this evidence, the trial court found that Peggy's deposit of her separate funds specifically into the jointly co-owned accounts was a voluntary transfer of ownership in the nature of a valid donation *inter vivos*. The trial court further found that "donative intent" existed by virtue of Peggy's testimony and actions. The trial court noted that the proof of claim Peggy filed indicated "that she believed at one time that the joint accounts were community property" and that her sworn detailed descriptive list indicated that those accounts were joint. The trial court further noted that Peggy specifically chose to deposit her separate funds into the joint account rather than her separate accounts and concluded that Peggy

failed to prove her specific intent to keep her funds separate. Therefore, the trial court denied Peggy's claim for reimbursement and rendered judgment that all separate funds deposited into the joint account of Peggy and Willie became jointly owned funds and that all items purchased with said funds were jointly owned by Peggy and Willie.

On August 1, 2021, the trial court signed a judgment, providing that Peggy's claims for reimbursement, as set forth in her sworn detailed descriptive list and her proof of claim, were denied, that three specifically identified banking and financial accounts that were jointly in the names of Willie and Peggy were co-owned by the succession and Peggy in the proportions of an undivided one-half (1/2) interest each, and "that all assets purchased from the [three specifically identified] joint banking and financial accounts ... [were] deemed to be jointly co-owned by the [succession and Peggy] in the proportions of an undivided one-half (1/2) interest each."[1] From this judgment, Peggy has appealed.

## APPELLATE JURISDICTION

Appellate courts have a duty to examine their subject matter jurisdiction *sua sponte*, even if the litigants do not raise the issue. **Succession of Jaga**, 2016-1291 (La. App. 1st Cir. 9/15/17), 227 So.3d 325, 327. Appeals from orders or judgments rendered in succession proceedings are governed by the rules applicable to appeals in ordinary proceedings, except that an order or judgment confirming, appointing, or removing a succession representative or granting an interim allowance under La. C.C.P. art. 3321 shall be executed provisionally, notwithstanding appeal. La. C.C.P. art. 2974.

This Court's appellate jurisdiction extends to final judgments and to interlocutory judgments when expressly allowed by law. **Matter of Succession of**

---

[1] The August 1, 2021 judgment also set forth a stipulation of the parties regarding Peggy and the succession's co-ownership of three specific parcels of real estate.

**Smith**, 2020-1139 (La. App. 1st Cir. 6/2/21), 326 So.3d 1252, 1254; see La. C.C.P. art. 2083. A final judgment is one that determines the merits of a controversy, in whole or in part; in contrast, an interlocutory judgment does not determine the merits, but only preliminary matters in the course of an action. La. C.C.P. art. 1841.

The judgment on appeal herein determines, in part, a preliminary matter in this succession—the denial of a claim made against the succession. As such, that portion of the judgment is interlocutory. The judgment also determines two specific issues in the succession, namely that three specific bank accounts were co-owned by Peggy and the succession and that "all assets" purchased from those three bank accounts were co-owned by Peggy and the succession. The resolution of these two issues, however, does not conclude the succession. The heirs have not been placed in possession of their respective portions of the estate, and a judgment homologating a final account by the administrator has not been rendered. See **Matter of Succession of Smith**, 326 So.3d at 1254; La. C.C.P. art. 3337. Since this judgment is not conclusive of the succession proceedings, the judgment does not constitute a final judgment. See **Matter of Succession of Smith**, 326 So.3d at 1254.

The Louisiana Code of Civil Procedure grants the right to an immediate appeal of certain judgments rendered in succession proceedings; however, the present judgment is not among those identified by the Code. See La. C.C.P. art. 3308 (judgment homologating tableau of distribution may be suspensively appealed); La. C.C.P. art. 3337 (judgment homologating final account is a "final judgment"); La. C.C.P. arts. 2122 and 2974 (governing appeals of orders appointing or removing a succession representative); **Succession of Jaga**, 227 So.3d at 327-328; **Matter of Succession of Smith**, 326 So.3d at 1254. Thus, the judgment may be appealed only as provided by La. C.C.P. art. 1915. **Matter of**

**Succession of Smith**, 326 So.3d at 1254; **Succession of Jaga**, 227 So.3d at 328, citing **In re Succession of Morgan**, 2015-0335 (La. App. 1ˢᵗ Cir, 2/24/16) (*unpublished*), 2016 WL 770192 at \*2 (judgment, which declared ownership of disputed estate property but was not a judgment of possession and did not dismiss a party, was a partial judgment subject to appeal only as provided by La. C.C.P. art. 1915); **In re Succession of Faget**, 2006-2159 (La. App. 1ˢᵗ Cir. 9/19/07), 984 So.2d 7, 10 (judgment declaring surviving spouse to be a co-owner of family home was partial judgment subject to appeal only under La. C.C.P. art. 1915).

The August 1, 2021 judgment on appeal does not fall within any of the categories of partial judgments subject to immediate appeal under La. C.C.P. art. 1915(A).[2] Therefore, the appeal of the judgment is governed by La. C.C.P. art. 1915(B)(1), which provides that a partial judgment "shall not constitute a final judgment unless it is designated as a final judgment by the court after an express determination that there is no just reason for delay." The trial court neither designated the judgment as final for purposes of immediate appeal nor did it make a determination that there was no just reason for delay. Therefore, the judgment is not a final judgment for purposes of immediate appeal. See La. C.C.P. art. 1915(B)(2). Consequently, this Court lacks appellate jurisdiction to consider the present appeal. See La. C.C.P. art. 1841, 1911, and 2083. In accord **Matter of Succession of Smith**, 326 So.3d at 1254; **Successions of Wayne**, 2018-1177 (La. App. 1ˢᵗ Cir. 5/31/19), 2019 WL 2332357, \*2; **Succession of Jaga**, 227 So.2d at 328; **In re Succession of Faget**, 984 So.2d at 10.

---

[2] Partial judgments immediately appealable under La. C.C.P. art. 1915(A) include (1) a judgment dismissing the suit as to less than all of the parties; (2) a judgment granting a motion for judgment on the pleadings; (3) a judgment granting a motion for summary judgment, except a summary judgment granted pursuant to La. C.C.P. art. 966(E); (4) a judgment on either the principal or incidental demand, when the two have been tried separately; (5) a judgment on the issue of liability, when that issue has been tried separately; and (6) a judgment imposing sanctions or disciplinary action pursuant to La. C.C.P. art. 191, 863, or 864, or La. C.E. art. 510(G).

We recognize that La. Const. art. V, §10(A) provides that a court of appeal has "supervisory jurisdiction over cases which arise within its circuit." However, the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts. **Stelluto v. Stelluto**, 2005-0074 (La. 6/29/05), 914 So.2d 34, 39. Under certain circumstances, appellate courts have exercised that discretion to convert an appeal of an interlocutory judgment into an application for supervisory writs, such as when the motion for appeal was filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Uniform Rules—Courts of Appeal, Rule 4-3 and where reversal of the district court's decision would terminate the litigation, or where clear error in the trial court's judgment, if not corrected, will create a grave injustice. **Boyd Louisiana Racing, Inc. v. Bridges**, 2015-0393 (La. App. 1st Cir. 12/23/15) (*unpublished*), 2015 WL 9435285, *3 (citations omitted).

Although we have the discretionary authority to convert Peggy's appeal to an application for supervisory writs and rule on the writ application, we decline to do so in this case because the ruling would not terminate or end the succession proceedings and Peggy will have an adequate remedy by review on appeal after rendition of a final judgment. Furthermore, the judgment for which Peggy seeks review lacks specificity and is thus, defective.

Although the form and wording of judgments are not sacramental, Louisiana courts require that a judgment be "precise, definite and certain." **Laird v. St. Tammany Parish Safe Harbor**, 2002-0045 (La. App. 1st Cir. 12/20/02), 836 So.2d 364, 365. As previously set forth, the judgment herein provides that "all assets purchased from the [three specifically identified] joint banking and financial accounts ... [were] deemed to be jointly co-owned by [the succession and Peggy], in the proportions of an undivided one-half (1/2) interest each." However, the judgment does not specify, describe, or set forth these assets or the value thereof,

10

information that we find is essential to resolution of the issues raised. Notably, this information should be evident from the language of the judgment without reference to other documents in the record. See **Laird**, 836 So.2d at 366. Thus, because the judgment is defective, this court lacks jurisdiction to review the merits, even if we were to convert the matter to an application for supervisory writs. See **Boyd Louisiana Racing, Inc.**, 2015 WL 9435285 at *4.[3]

## CONCLUSION

For all of the above and foregoing reasons, this appeal is dismissed for lack of subject matter jurisdiction, and we decline to exercise our discretion to convert this matter to a supervisory writ application. All costs of this appeal are assessed to the appellant, Peggy L. Saucier.

**APPEAL DISMISSED.**

---

[3] We recognize that in an appeal of a final judgment, any defect in the language of the judgment would have required this Court to remand the matter to the trial court for amendment of the judgment in accordance with La. C.C.P. arts. 1918 and 1951. However, the judgment before us is neither a final judgment nor properly before us on appeal; therefore, we are not required to remand for amendment of the judgment.



# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

# 2021 CA 1466

# SUCCESSION OF WILLIE B. SAUCIER

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., agrees in part and dissents in part.**

I agree with the majority that this Court lacks appellate jurisdiction to consider the present appeal. However, I would have reviewed this matter under this Court's supervisory jurisdiction.