GUIDRY, J.
| ^Plaintiff, KAS Properties, LLC (KAS), appeals from a judgment of the district court, upholding the termination of a lease by the defendants, Louisiana Board of Supervisors for the Louisiana State University, Health Care Services Division (the Board) and Louisiana Division of Administration (DOA), and dismissing its claims against the Board with prejudice. For the reasons that follow, we convert this appeal to an application for supervisory writ and deny the relief requested.
FACTS AND PROCEDURAL HISTORY
KAS and the Board executed a lease agreement approved by the DOA on July 30, 2008, for cold storage warehouse and office space for the operations of the University Medical Center in Lafayette, Louisiana. The lease agreement was subsequently amended to provide a lease term beginning March 31, 2009 through February 28, 2014, in consideration of payment of $532,000.20, to be made payable in sixty equal installments of $8,866.67.
Thereafter, on October 8, 2012, the Board forwarded a letter to KAS, notifying KAS that the Board was exercising its right to cancel the lease due to the fact that public funding for the Louisiana State University, Health Care Services Division (LSU-HCSD) had been drastically re *1009 duced and the finding was no longer adequate to meet the obligations of the lease. The letter further stated that the lease shall be terminated effective sixty days from KAS’s receipt of the notice.
After receiving the Board’s letter, KAS requested payment of the balance due on the lease. The Board responded to KAS’s request by directing KAS to paragraph twenty-two of the lease, the fiscal funding provision, which stipulates that the lease may be terminated with sixty-days written notice to the lessor when funding by the legislature is not sufficient to meet the requirements of the lease. | ..¡Because the required written notice was given for termination of its occupancy, the Board stated that rental payments were going to cease as of December 12, 2012.
On October 31, 2012, KAS filed an administrative complaint pursuant to La. R.S. 39:1673 with Sandra Gillen, the Director for the Office of State Purchasing and Travel, asserting that the Board breached its contract with KAS by prematurely terminating its lease without sufficient cause. Ms. Gillen subsequently delegated her decision-making authority to John Davis, Director of the Office of Facility Planning and Control. Mr. Davis issued a decision on January 18, 2013, finding that the lease agreement was properly cancelled due to a lack of public funding. Mr. Davis specifically found that the Board properly exercised its right to cancel the lease agreement pursuant to paragraph twenty-two of the lease; that the Board experienced a significant reduction in public funding; and that the Board provided KAS with the requisite sixty-day written notice of its intent to cancel the lease agreement.
Thereafter, KAS filed an appeal of Mr. Davis’s decision with the Commissioner of the Division of Administration (Commissioner). On March 18, 2013, the Commissioner issued a decision, finding that the Board was justified in terminating the lease under paragraph twenty-two of the lease due to a reduction in public funding and denying KAS’s appeal. KAS filed a petition for judicial review in the Nineteenth Judicial District Court, naming the Board and the DOA as defendants and seeking review of the administrative decision rendered by the Commissioner. Following briefing and a hearing, the district court rendered judgment in favor of the Board and the DOA, affirming the Commissioner’s decision, upholding the Board’s termination of the lease, and dismissing KAS’s claims against the Board and the DOA with prejudice.
KAS now appeals from the district court’s judgment. In response to KAS’s appeal, the Board has filed a declinatory exception raising the objection of lack of | ¿subject matter jurisdiction and a motion to dismiss KAS’s appeal, asserting that according to La. R.S. 39:1691(E), KAS does not have a right to seek appeal of the district court’s judgment.
DISCUSSION

Appellate Jurisdiction

Actions by or against the state in connection with a contract are governed by La. R.S. 39:1691, which provides, in pertinent part:
C. Actions under contracts or for breach of contract. The Nineteenth Judicial District Court shall have exclusive venue over an action between the state and a contractor who contracts with the state, for any cause of action which arises under or by virtue of the contract, whether the action is on the contract or for a breach of the contract or whether the action is for declaratory, injunctive, or other equitable relief.
* * *
*1010 E. Writs or appeals; district court decisions. Any party aggrieved by a final judgment or interlocutory order or ruling of the Nineteenth Judicial District Court may appeal or seek review thereof, as the case may be, to the Court of Appeal, First Circuit or the Supreme Court of Louisiana, as otherwise permitted in civil cases by law and the constitution
Subparagraph E, which provides for the right to appeal from a judgment of the district court, was enacted by 2008 La. Acts No. 789. Section 2 of Act 789, however, specifically provides that “[tjhis Act shall not apply to any claim or controversy arising out of any contract or agreement executed prior to August 1, 2008.” In addressing the 2008 enactment of subpara-graph E, the Louisiana Supreme Court confirmed that “the legislature did not intend that the Procurement Code provide a right of appeal relative to any claims or controversies arising out of any contract executed prior to August 1, 2008.” Willows v. State, Department of Health & Hospitals, 08-2357, p. 9 (La.5/5/09), 15 So.3d 56, 62. As such, the exclusive means of obtaining judicial review under La. R.S. 39:1691 for an action arising from a contract executed prior to August 1, 2008, is an appeal to the Nineteenth Judicial District Court. Willows, 08-2357 at p. 9, 15 So.3d at 62.
|.Jn the instant case, KAS and the Board executed a lease agreement on July 30, 2008, two days before the effective date of La. R.S. 39:1961(E). Further, although the lease agreement was subsequently amended on March 4, 2009, to modify the lease term and to increase the consideration paid by the Board, the remainder of the original lease, including the termination provision at issue, remained in effect. Consequently, because the amendment merely modified the obligation, without the intention to extinguish it, it did not create a new lease. See La. C.C. arts. 2726 and 1881; see also 5 Louisiana Civil Law Treatise, Law of Obligations § 17.14 (noting that an agreement by one party to pay the other party more than originally agreed is á mere modification of the earlier agreement). As such, because the lease agreement at issue was executed prior to August 1, 2008, this court lacks appellate jurisdiction to consider the merits of KAS’s appeal.
However, the supreme court has noted that even though this court lacks appellate jurisdiction to consider matters arising under La. R.S. 39:1691 when the contract was executed prior to August 1, 2008, we still retain the ability to consider the matter under this court’s supervisory jurisdiction. See Willows, 08-2357 at pp. 9-10, 15 So.3d at 62; see also La. Const, of 1974, art. V, § 10(A). Accordingly, because KAS filed its motion for appeal within the thirty-day delay provided for seeking supervisory writs, we exercise our discretion to convert KAS’s appeal to an application for supervisory writ, and consider the merits of KAS’s appeal under our supervisory jurisdiction. See Uniform Rules — Court of Appeal, Rule 4-3; see also Stelluto v. Stelluto, 05-0074, p. 7 (La.6/29/05), 914 So.2d 34, 39 (noting that the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate courts).

Termination of the Lease Agreement

Paragraph twenty-two of the lease agreement, entitled “Fiscal Funding | ^Provisions” provides, in pertinent part:
A continuation of the lease is contingent upon the continuation of and appropriation of funds by the Legislature to fulfill the requirements of this lease by Lessee. In the event that public funding for Lessee becomes inadequate to *1011 meet the obligations of this lease, Lessee may, with the approval of the Division of Administration, terminate the lease without any penalty assessed against Lessee therefor or reduce the space provided and the rental due by giving sixty (60) days written notice to Lessor.
Contracts have the effect of law for the parties, and the interpretation of a contract is the determination of the common intent of the parties. The reasonable intention of the parties to a contract is sought by examining the words of the contract itself. Clovelly Oil Company, LLC v. Midstates Petroleum Company, LLC, 12-2055, p. 5 (La.3/19/13), 112 So.3d 187, 192. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent. Common intent, therefore, is determined-in accordance with the general, ordinary, plain and popular meaning of the words used in the contract. Clovelly, 12-2055 at p. 5, 112 So.3d at 192.
The plain language of paragraph twenty-two of the lease agreement clearly distinguishes between legislative funding through appropriation as a condition to continuation of the lease agreement and inadequate public funding as a basis for termination of the agreement. The first sentence of paragraph twenty-two makes clear that continuation of the lease is dependent upon the appropriation of funds by the Legislature. This sentence is similar to language contained in La. R.S. 39:1615(A), which provides that payment and performance of obligations after the first year of a multi-year contract “shall be subject to the availability and appropriation of funds therefor.” However, the second sentence of paragraph twenty-two makes clear that termination of the lease agreement by the Board is |7permissible if public funding becomes inadequate to meet the obligations of the lease. Importantly, termination is not qualified by-the source of public funding.
It is undisputed that the Board receives funding from multiple sources, including state general funds, federal funds, and self-generated revenue. With regard to federal funds, Federal Medical Assistance Percentages (FMAP) are used in determining the amount of federal matching funds for state expenditures for assistance payments for certain social services and state medical and medical insurance expenditures (i.e. Medicaid). When the Louisiana Legislature enacted its appropriation bill during the 2012 Legislative session, it relied on the published FMAP rates in considering and making appropriations to LSU-HCSD. However, following the Legislature’s enactment of its appropriation bill, the President of the United States’ signed the “Moving Ahead for Progress in the 21st Century Act” (MAP-21). As a result of MAP-21, Louisiana’s FMAP rates were significantly reduced from 72% to 65%. This change in the FMAP rate resulted in a decrease of federal funding and a 24% reduction to LSU-HCSD’s operating budget.
Louisiana Revised Statute 17:1519.6(0 provides, in pertinent part:
If the amount of such revenues budgeted and allocated for such purpose in the Medicaid budget is revised during a fiscal year, the Department of Health and Hospitals shall notify the board of such revision. Upon receipt of the notification, the board shall adjust the operating budget for these hospitals which adjustment shall be in conformity with the revision.
According to the record, the Board approved a resolution granting Interim President, William Jenkins, the authority to develop and present a plan to address *1012 budget reductions caused by the decrease in federal Medicaid funding, minimizing as much as feasible the adverse impact upon patient care and medical education. President Jenkins thereafter compiled a revised budget, which balanced cuts across the LSU-HCSD and determined that the subject lease could no longer be maintained. The revised budget was thereafter approved by the DOA.
RBased on our review of the record and the applicable law, we find that the Board suffered a reduction in public funding due to the Federal Government’s reduction of Louisiana’s FMAP rate, that the Board acted within its authority to address the reduction, in federal funding by adjusting its operating budget, and that the Board properly terminated the lease in accordance with paragraph twenty-two of the lease agreement.
CONCLUSION
For the foregoing reasons, we convert KAS’s appeal to an application for supervisory writ and deny the writ application. All costs associated with this matter are assessed to KAS Properties, LLC.
APPEAL CONVERTED TO APPLICATION FOR SUPERVISORY WRIT; WRIT DENIED.