<u>**NOT DESIGNATED FOR PUBLICATION**</u>

STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 1239

IN RE: DISSOLUTION OF OAK ISLAND CORPORATION

Judgment Rendered:   **OCT 17 2024**

\* \* \* \* \*

On Appeal from the
22nd Judicial District Court
In and for the Parish of St. Tammany
State of Louisiana
Trial Court No. 2021-12584

Honorable Alan A. Zaunbrecher, Judge Presiding

\* \* \* \* \*

| | |
|---|---|
| Ross F. Lagarde<br>Alexander L. H. Reed<br>Jeffrey G. Lagarde<br>Slidell, LA | Attorneys for Plaintiffs-Appellees,<br>Morgan Lowe Conravey and Matthew<br>James Lowe |
| | |
| Barry W. Bolton<br>Bogalusa, LA | Attorney for Defendant-Appellant,<br>Lorre L. Lowe |

\* \* \* \* \*

BEFORE: McCLENDON, HESTER, AND MILLER, JJ.

McClendon, J. concurs in part and dissents in part and assigns reasons.

**HESTER, J.**

Lorre L. Lowe appeals the judgment of the trial court granting Morgan Lowe Conravey and Matthew James Lowe's motion to enforce settlement agreement. For the reasons that follow, we dismiss the appeal.

## FACTS AND PROCEDURAL HISTORY

On June 10, 2021, Morgan and Matthew filed a petition for the involuntary dissolution of Oak Island Corporation ("Oak Island") and for the appointment of liquidators pursuant to La. R.S. 12:1-1430(A)(2) and (5).[1] Morgan and Matthew own 50% of Oak Island and Lorre L. Lowe owns the remaining 50%. The sole asset of Oak Island is a parcel of land located in St. Tammany Parish (the "parcel"). The company had no outstanding liabilities.

As alleged in the petition, a special meeting was held in 2013 by Lorre and his brother Toby J. Lowe, the shareholders at that time, to discuss ownership, use, division, maintenance, and development of the parcel; however, the shareholders were unable to agree. Morgan and Matthew, Toby's children, acquired his 50% share in Oak Island in 2020, and alleged in the petition that there had been a deadlock

---

[1] Louisiana Revised Statutes 12:1-1430 sets forth the grounds for judicial dissolution and provides in relevant part as follows:

A. A district court may dissolve a corporation in any of the following:

…

(2) A proceeding by a shareholder if any of the following is established:

(a) The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock, and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.

(b) [Reserved.]

(c) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired.

(d) [Reserved.]

…

(5) A proceeding by a shareholder if the corporation has abandoned its business and has failed within a reasonable time to liquidate and distribute its assets and dissolve.

as to the management of Oak Island's corporate affairs since 2013. Citing the contentious business relationship between the shareholders and the continued deadlock, Morgan and Matthew sought judicial dissolution and liquidation of the company's sole asset. Morgan and Matthew also sought to be appointed liquidators.

The matter was heard on September 30, 2021, at which time the trial court asked counsel if there was an agreement to liquidate and sell the asset.[2] However, that question was never directly answered during the hearing. Counsel for Lorre indicated that there was an agreement that a real estate agent needed to be appointed, but counsel for Morgan and Matthew disagreed and suggested that the trial court appoint a liquidator. At the conclusion of the brief hearing, the trial court appointed an independent liquidator pursuant to La. R.S. 12:1-1432 to oversee the dissolution of Oak Island. A judgment conforming to its ruling was signed on October 11, 2021.

On January 20, 2022, the liquidator submitted a report to the trial court and requested that the court issue a formal judgment of dissolution authorizing the liquidator to wind up the affairs of Oak Island.[3] Thereafter, on February 1, 2022, the trial court issued a judgment ordering the dissolution of Oak Island pursuant to La. R.S. 12:1-1433(A), and the dissolution was made effective on September 30, 2021. The judgment made no mention of the liquidation or winding up of affairs as requested by the independent liquidator. No further pleadings or judgments relative to dissolution and liquidation are contained in the record. See La. R.S. 1-1433(B) ("After entering the judgment of dissolution, the court shall direct the winding up

---

[2] The minutes reflect that the "matter came on for hearing this day on a Petition for Involuntary Dissolution of Oak Island Corporation and for Appointment of Liquidators set by the Court."

[3] The independent liquidator's report stated that the tax assessor "indicated that the [parcel] is valued at $22,140.00." However, the report indicated that there were multiple factors that could affect the actual value, including flooding concerns, inability to elevate the property, and shareholders' contradictory estimation of the value. Accordingly, the independent liquidator contacted a real estate appraiser to conduct a formal appraisal. The record does not contain any additional reports from the independent liquidator or any appraisals.

3

and liquidation of the corporation's business and affairs in accordance with R.S. 12:1-1405 ...").

Over a year after the judgment ordering dissolution was entered, a motion to enforce settlement agreement was filed on May 1, 2023. Morgan and Matthew sought to enforce a settlement agreement reached in a mediation between Toby, Lorre, and their brother, Rodney Lowe, approximately one year prior on May 11, 2022.[4] According to the settlement term sheet signed by Toby, Lorre, and Rodney, "Morgan and Woody Lowe will buy Lorre's interest in Oak Island Corporation for $150,000."[5] Morgan and Matthew maintained that this settlement term would obviate the need to liquidate Oak Island and forgo expenses associated with liquidation. However, Lorre refused to sign the documents to effectuate the settlement. Morgan and Matthew sought an order compelling Lorre to execute the settlement documents required for the transfer of Lorre's interest in Oak Island. In the alternative, Morgan and Matthew sought an order specifically enforcing the settlement term sheet and declaring the terms effectuated despite Lorre's refusal to sign the documents.

A hearing on the motion to enforce was set for June 22, 2023. However, on June 8, 2023, J. Douglas Sunseri, counsel for Lorre filed a motion to withdraw, advising the trial court that Lorre terminated his services and retained new counsel, Barry W. Bolton. The trial court granted the motion to withdraw on June 14, 2023, eight days prior to the hearing on the motion to enforce. That same day, Mr. Bolton

---

[4] The May 11, 2022 mediation arose from other litigation as noted in *Lorre L. Lowe and Rodney C. Lowe, Individually and o/b/o Lorre L. Lowe v. Leon Lowe & Sons, Inc, Leon Lowe & Sons Partnership, Lowe Bros., L.L.C., and Toby J. Lowe*, 2023 CA 0920, also handed down this date.

In their motion to enforce, Morgan and Matthew do not indicate that they participated in the mediation. Moreover, neither Morgan nor Matthew signed the settlement term sheet. However, it is noted that the initial settlement term sheet proposed by Toby in mediation involved Morgan and Matthew selling their interest in Oak Island to Lorre for $75,000.00 each.

[5] "Woody Lowe" is referenced in the settlement term sheet. No explanation is provided in the record as to the discrepancy in the names.

filed a motion to continue the hearing on the motion to enforce on the basis that he was retained as counsel on June 14, 2023. No opposition to the motion to enforce was filed on behalf of Lorre by his former counsel or Mr. Bolton.

At the hearing on June 22, 2023, the trial court first addressed the motion to continue. In support of his motion, Lorre's counsel argued as follows:

> Your Honor, we ... filed a motion for a continuance on this matter. It appears that prior counsel on the 6th -- on the 8th of June sent a letter to Mr. Lorre Lowe informing him that he was withdrawing as his counsel. Subsequent to that, Mr. Lowe came in and retained me on this particular matter.[6] I filed -- I immediately filed a motion to continue based upon the fact that we don't know whether or not -- what's in the file for opposing counsel, whether or not he has been -- requested some form of discovery, whether he has answered it or has not answered it that would prevent my client from being able to present witnesses.

The trial court stated that it did not "ordinarily grant motions to continue based on a change of counsel" and that it "flashes red flags that it's nothing but a delay tactic."

Later in the hearing, the trial court asked Mr. Bolton several questions regarding his representation of Lorre and the request for a continuance:

THE COURT:

> All right. Do you represent Lorre Lowe and/or the Lowe family in other matters pertaining to the overall resolution?

MR. BOLTON:

> Well, Your Honor, I was hired this year, 2023, on another matter that involved several companies of Mr. Lowe. I was given a continuance of only two months, which we were not able to complete our discovery and were made to go to court within two months after --

THE COURT:

> Second question: How can this Court come to any conclusion other than this is a delay tactic when Mr. Sunseri represented Mr. Lowe in this matter since June -- well, I say -- it was filed in June of 2021 [sic], and suddenly when the issue comes before the Court to enforce the settle[ment] agreement, which on its face appears to say exactly

---

[6] Despite these statements from Mr. Bolton, in his June 8, 2023 letter to Lorre, Mr. Sunseri, Lorre's prior counsel, stated that "[i]t is our understanding that you have terminated our firm's services in the above matter and retained Mr. Barry Bolton." Mr. Sunseri did not provide the date of his termination therein, but attached a copy of the motion and order to withdraw and informed Lorre that the hearing on the motion to enforce was set for June 22, 2023.

what the movants say it says, how can the Court view this as anything but a delay tactic?

MR. BOLTON:

Well, Your Honor, I can say to the Court that when I reviewed the case, Mr. Sunseri kind of -- I did the same type thing prior to the other hearing. There were some experts that were supposed to be hired to do forensic accountings and whatnot that Mr. Sunseri failed to properly employ and there were some -- to show some form of fraud, things of that nature.

After I attempted within the two months to get the forensic accounting in, there were some things that would have required him to get some discovery, things that we could not get, which, of course, Mr. Sunseri did not get the proper discovery.

Now, the reason Mr. Sunseri waited until the 8th of June and sent this to Mr. Lowe, I have no idea. I was not representing Mr. Lowe on this particular matter. I know Mr. Lowe and Mr. Sunseri [have] had some type of problems. I don't know if this was an intentional situation from his attorney or whatever the case may be.

But at this point, Your Honor, as far as the Oak Island information, as far as me being able to properly represent him, I have, not only in the first matter but in this matter, too, I've also requested from Mr. Sunseri his entire file so that I could review to see whether or not proper discovery had been made so that I could get witnesses in if necessary. If he had properly responded to opposing counsel to this point, I cannot get anything from Mr. Sunseri. I don't know if it's an intentional issue as far as the attorney is concerned.

But as far as Mr. Lorre Lowe, he has no ill intent to the Court, no disrespect intended to the Court. He sincerely and passionately wants to address this matter before the Court and he wants to be able to present to the Court the proper information so the Court can make an accurate determination of whether or not there was an informed decision or whether or not -- the main issue that he wants to present to the Court is that some things were done inside of these companies to devalue the value of Oak Island. And then it was presented to him -- he's a 75-year-old man -- presented to him in mediation that this was a proper valuation and we want to suggest to the Court that it was an improper valuation because of them moving funds from one to devalue the value of one company ---

THE COURT:

All right. You are getting away from the question.

MR. BOLTON:

So to get back to your question, Your Honor, there is no intent on Mr. Lorre Lowe to -- he has -- he's involved in a company that was created by his parents and he's been in this for years.

As far as the continuance that we had asked for, Your Honor, it would not have unnecessarily delayed any type of imminent issue or something that would have prevented them from continuing business. As it stands right now, Mr. Toby Lowe is in control of everything. No one has filed any type of injunction[] to prevent him from moving forward, so that would not have been any type of thing that would have harmed Mr. Toby Lowe or his sons by this continuance other than allowing Mr. Lorre Lowe to come up to speed with someone that would actually work on his behalf as an attorney. And I would suggest to the Court that I cannot explain to the Court what went on with the prior attorney because he will not communicate with me. He will not give me his file.

The court denied the motion to continue and heard minimal arguments from Morgan and Matthew on the motion to enforce. Lorre was not permitted to advance arguments at the hearing due to the failure to file an opposition.[7] At the conclusion of the abbreviated hearing, the trial court granted the motion to enforce.

On June 23, 2023, Lorre filed a motion to reconsider the motion to continue, arguing that the trial court denied his initial motion to continue on the mistaken belief that the motion had been improperly fax-filed. Lorre further argued that his counsel was prevented from arguing the motion to continue due to this mistake. On July 12, 2023, the trial court vacated the denial of the motion to continue rendered on June 22, 2023 and granted the motion to reconsider. However, the trial court denied the motion to continue again. In its reasons for judgment, the trial court indicated that, upon further review, the motion to continue was fax-filed in compliance with La. R.S. 13:850.[8] Further, the trial court observed that Lorre's counsel was permitted to set forth his argument for the continuance at the June 22, 2023 hearing. After

---

[7] Louisiana District Court Rule 9.9(c) provides that a party must furnish the opposition memorandum to the trial judge and all parties so that it is received at least eight calendars days prior to the hearing, which is this case was June 14, 2023. The failure to timely furnish the opposition memorandum may result in the forfeiture of oral argument. La. Dist. Court Rules, Rule 9.9(e).

[8] Louisiana Revised Statutes 13:850(A) provides that any document in a civil action may be filed with the clerk of court by facsimile transmission, which filed shall be deemed complete on the date and time indicated on the clerk of court's fax transmission receipt. If the filing party complies with Subsection B, the filing has the same force and effect as filing the original document. **Thurman v. Aguilar**, 2021-1514 (La. App. 1st Cir. 6/22/22), 343 So.3d 784, 790-91, writ denied, 2022-01110 (La. 11/1/22), 349 So.3d 7. Subsection B provides that the entire original document fax filed and all fees must be delivered to the clerk of court's office within seven days, exclusive of legal holidays, after the clerk of court receives the fax filing. La. R.S. 13:850(B).

considering the record and the arguments advanced at the hearing, the trial court concluded that Lorre failed to establish that a peremptory ground for a continuance existed, and denied the motion to continue.[9]

On July 25, 2023, the trial court signed the judgment granting the motion to enforce, compelling Lorre to execute the document required to transfer his interest in Oak Island, and decreeing the settlement term sheet to be enforced and effectuated if Lorre failed to execute the documents. Lorre timely sought a suspensive appeal from the July 25, 2023 judgment on August 22, 2023, which was granted. This appeal followed.

On appeal, Lorre raises the following assignments of error contending that the trial court erred in: (1) failing to grant a continuance on June 22, 2023; (2) denying Lorre due process by proceeding with the hearing on the motion to enforce and rendering judgment when he had good grounds for continuance; and (3) allowing Morgan and Matthew to enforce a settlement to which they were not a party and had no evidence showing that they were a third party beneficiary thereto.

**APPELLATE JURISDICTION**

As an appellate court, we have the duty to examine our subject matter jurisdiction and to determine *sua sponte* whether such subject matter jurisdiction exists, even when the issue is not raised by the litigants. **Gulfco of Louisiana, LLC v. Plaisance**, 2022-0166 (La. App. 1st Cir. 3/8/23), 362 So.3d 660, 662. This court's appellate jurisdiction only extends to "final judgments." **Id.** See also La. Code Civ. P. art. 2083(A). A final judgment is one that determines the merits in whole or in

---

[9] The trial court may grant a continuance on peremptory or discretionary grounds. La. Code Civ. P. arts. 1601 and 1602. There are only two peremptory grounds: (1) the party seeking the continuance, despite due diligence, has been unable to obtain material evidence; and (2) a material witness is absent without the contrivance of the party applying for the continuance. La. Code Civ. P. art. 1602. Absent peremptory grounds, a continuance rests within the sound discretion of the trial court, and its ruling should not be disturbed on appeal in the absence of a clear abuse of discretion. **St. Tammany Par. Hosp. v. Burris**, 2000-2639 (La. App. 1st Cir. 12/28/01), 804 So.2d 960, 963.

8

part, whereas an interlocutory judgment does not determine the merits but only preliminary matters in the course of an action. La. Code Civ. P. art. 1841.

In **Myers v. Diaz**, 2022-0445 (La. App. 1st Cir. 11/4/22), 354 So.3d 78, 80-81, this court considered a judgment granting a motion to enforce a settlement agreement. The judgment ordered defendants to pay specific amounts to plaintiff and ordered plaintiff to execute a full release agreement in favor of defendants, which was to contain a reservation of plaintiff's claims against certain UM, property damages, and statutory penalty claims against certain insurers. This court concluded that "the judgment [was] a non-final, interlocutory judgment, which [was] not appealable," observing that the judgment granting the motion to enforce was "devoid of language dismissing any of the parties, neither does it dispose of the entire matter." **Id**.

In this matter, the July 25, 2023 judgment is not final as it fails to determine the merits in whole or in part. There is no dismissal of parties nor is the entire case dismissed. In fact, the motion to enforce did not seek dismissal of any party or of the entire lawsuit. Moreover, the judgment does not address the status of the independent liquidator, the winding up or liquidation of Oak Island, or otherwise address any aspect of the judicial dissolution proceedings.[10] Accordingly, the July 25, 2023 judgment does not fully resolve the matter. The judgment appears to be a

---

[10] Pursuant to La. R.S. 12:1-1432(C), the independent liquidator may exercise all of the powers of the corporation, through or in place of its board of directors, to the extent necessary to wind up the business and affairs of the corporation as contemplated by R.S. 12:1-1405 and to manage the affairs of the corporation in the best interests of its shareholders and creditors. Pursuant to La. R.S. 12:1-1405(A), a dissolved corporation continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including collecting its assets, disposing of its properties that will not be distributed in kind to shareholders, discharging its liabilities, distributing its remaining property among shareholders according to their interests, and doing every other act necessary to wind up and liquidate its business and affairs. Notably, La. R.S. 12:1-1405(B)(2) provides that the dissolution of a corporation does not prevent transfer of shares or securities.

non-final, interlocutory judgment,[11] which is not appealable.  See **Myers**, 354 So.3d at 81.

The proper procedural vehicle to contest an interlocutory judgment is by application for supervisory writ filed within thirty days of the interlocutory judgment.  See La. Code Civ. P. art. 2201; **Myers**, 354 So.3d at 81.  Under certain circumstances, appellate courts have exercised the discretion to convert an appeal of an interlocutory judgment into an application for supervisory writs, such as when the motion for appeal was filed within the thirty-day time period allowed for the filing of an application for supervisory writs under Uniform Rules—Courts of Appeal, Rule 4-3 and where reversal of the trial court's decision would terminate the litigation, or where clear error in the trial court's judgment, if not corrected, will create a grave injustice.  **Sauce v. Burke**, 2022-0541 (La. App. 1st Cir. 11/7/22), 356 So.3d 439, 447.

Lorre filed a motion to appeal the July 25, 2023 judgment within the thirty-day time period allowed for the filing of an application for supervisory writs under Uniform Rules—Courts of Appeal, Rule 4-3.  However, because the other criteria set forth above has not been met, we decline to exercise our supervisory jurisdiction to review the July 25, 2023 judgment.  See **Sauce**, 356 So.3d at 448; **Stelluto v. Stelluto**, 2005-0074 (La. 6/29/05), 914 So.2d 34, 39 (the decision to convert an appeal to an application for supervisory writs is within the discretion of the appellate court).

---

[11] See **Koerner v. Certain Underwriters at Lloyd's London**, 2024-00134 (La. 3/19/24), 381 So.3d 702, 702-03 (acknowledging that "prior to final judgment the trial court may, at its discretion and on its own motion, change the result of interlocutory rulings it finds to be erroneous" and that "a party may ask the trial court to exercise its discretion to reconsider an interlocutory ruling").

10

## CONCLUSION

For the above and forgoing reasons, Lorre L. Lowe's appeal of the trial court's July 25, 2023 judgment is dismissed. Costs of this appeal are assessed to the plaintiff-appellant, Lorre L. Lowe.

**APPEAL DISMISSED.**

# STATE OF LOUISIANA

# COURT OF APPEAL

# FIRST CIRCUIT

## 2023 CA 1239

## IN RE: DISSOLUTION OF OAK ISLAND CORPORATION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**McClendon, J., concurring in part and dissenting in part.**

Under the particular facts of this case, I concur with the majority's conclusion that this court lacks appellate jurisdiction. However, I believe this court should exercise its supervisory jurisdiction to review this matter and address the issues presented for review.